FRANKLIN v. UNITED STATES.

CONSTRUCTION *of section* 3 *of act of Congress of* 1790 *relating to crimes.* The Territory of Colorado is not a place or district of country under the sole and exclusive jurisdiction of the United States within the meaning of section 3 of the act of Congress of 1790.    1 Stat. at Large, 113.

JURISDICTION — *averment as to, in indictment for murder under act of Congress.* An indictment based upon section 3 of the act of Congress of 1790, in which it is alleged that the murder was committed " at the said county of Gilpin " without further description of the place, and without any averment as to the jurisdiction of the United States, is not sufficient.

*Error to District Court, Gilpin County.*

Mr. JOHN W. REMINE, for plaintiff in error.

Mr. GEORGE W. CHAMBERLAIN, United States District Attorney, for the government.

HALLETT, C. J.  At the December term, 1864, of the district court of the first judicial district, sitting at Central City, Gilpin county, the plaintiff in error was indicted for murder, tried and convicted of that crime, and sentenced to be executed.

He prosecutes this writ of error to reverse the judgment of the district court, and, together with other causes, he assigns the following as error :

" The court erred in entertaining jurisdiction of the offense charged in the indictment, the said first judicial district of Colorado Territory not being in the sole and exclusive jurisdiction of the United States."

The indictment appears to be founded upon section 3 of " An act for the punishment of certain crimes against the United States," approved April 30, 1790, which is in the following words :

"If any person or persons shall, within any fort, arsenal, dock-yard, magazine, or any other place or district of country, under the sole and exclusive jurisdiction of the United States commit the crime of willful murder, such person or persons, on being thereof convicted, shall suffer death."

The principal question presented in this record is, whether the place where the crime was committed was, at the time of the offense, within the descriptive terms of this act, so as to give the district court jurisdiction of the offense. The indictment sets forth that the crime was committed "at the said county of Gilpin," without further description of the place, and without any averment as to the jurisdiction of the United States. If the act operates in the Territories in the same way as in the several States, and to no greater extent, in other words, if the act operates in this Territory only within forts, arsenals and other places where the United States have exclusive jurisdiction, in virtue of exclusive ownership, it seems to be necessary, under the act, to aver in the indictment and prove upon the trial, that the place where the crime is committed is within the descriptive terms of the statute. *United States* v. *Cornell,* 2 Mason, 62. As this indictment contains no averment whatever as to the jurisdiction of the United States it is fatally defective, unless the act recited has a more enlarged operation in this territory than in the several States. If, as has been urged, the entire territory is a place or district of country under the sole and exclusive jurisdiction of the United States within the meaning of this act, it ought to be sufficient to allege that the crime was committed in that part of the territory which is within the jurisdiction of the particular court in which the indictment may be presented. If such is the meaning of the law, this, together with the seventh section of the same act, is the law of homicide in

this territory, in force wherever the process of the court runs, and wherever the court has jurisdiction under any law, and, therefore, it is sufficient to allege that the crime was committed within the geographical limits which define the territory, over which the court has jurisdiction; in other words, within the county or counties within and for which the court is sitting. Therefore we must inquire whether this territory is a place or district of country under the sole and exclusive jurisdiction of the United States within the meaning of the law mentioned. We may find an answer to this inquiry in the sixteenth section of the act establishing this territory, which declares "that the constitution and all laws of the United States, which are not locally inapplicable, shall have the same force and effect within the said territory of Colorado as elsewhere within the United States." Within the several States, section 3 of the act of 1790 provides for punishing murder, where committed in a fort, arsenal, dockyard or the like place, owned by the general government, and the above-mentioned section of the organic act declares it shall have the same force and effect in this territory. It may be suggested that the words "force and effect," used in the organic act, refer to the penal power of the law, and were not designed to limit its operation to places owned by the general government as in the several States. But a law is presumed to be effectual to accomplish its purposes, and therefore it was not necessary to declare what force and effect the act of 1790 should have in this territory, except for the purpose of limiting the places within which it should obtain. If, by the terms of the act, it is in force in the territory, its power is declared in the language of the act itself, and the limitation in the organic act, that it shall have the same force and effect as elsewhere within the United States, can refer only to the places in the territory within which it shall operate. If then, in obedience to the sixteenth section of the organic act, we give section 3 of the act of 1790 the same force and effect in this territory which it has elsewhere in the United States, we shall apply it to murder

committed in forts, arsenals and the like places belonging to the United States and in the Indian country.

We may reach the same conclusion without referring to the sixteenth section of the Organic Act. In all its legislation, congress pursues the authority given in the constitution, and we may refer the section under consideration to the sixteenth clause of section 8, article 1 of that instrument. In that clause of the constitution, congress is invested with exclusive legislative authority over such district (not exceeding ten miles square) as may, by cession of particular States, and the acceptance of congress, become the seat of government of the United States, and like authority over all places purchased by the consent of the legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards and other needful buildings.

The description of places in the act is nearly the same as in this clause. The words, "fort, arsenal, dock-yard and magazine," are found in the act and in the constitution, and the words, "other place or district of country," occurring in the act, but not in the constitution, were probably inserted out of abundant caution, or probably they refer to the district of Columbia, which, at the time of this enactment, had no existence but was in contemplation. Of these words, the *Supreme Court in United States* v. *Bevans*, 3 Wheat. 390, say : " Congress might have omitted in its enumeration some similar place within its exclusive jurisdiction, which was not comprehended by any of the terms employed, to which some other name might be given ; and, therefore, the words ' other place or district of country ' were added." Beyond doubt, this law was enacted in execution of the power conferred in this clause of the constitution. Now there is nothing concerning the territories of the United States in this clause ; it refers only to the federal seat of government, and to forts, arsenals, etc. The power to govern the territories of the United States is not derived from this clause of the constitution ; that power is conferred by the clause of the constitution which enables congress to

make all needful rules and regulations respecting the territory belonging to the United States, or it arises out of the general right of sovereignty, which exists in the federal government. *American Insurance Co.* v. *Canter*, 1 Pet. 511. The law we are discussing is not more comprehensive than the clause of the constitution upon which it rests, and therefore this territory, as a territory, is not within its descriptive terms.

In several enactments, congress has shown its concurrence in this view. By act of June 30, 1834, section 25 (4 Stat. 733), it is declared :

"That so much of the laws of the United States, as provides for the punishment of crimes, committed within any place within the sole and exclusive jurisdiction of the United States, shall be in force in the Indian country, provided, the same shall not extend to crimes committed by one Indian, against the person or property of another Indian."

The Indian country at that time comprised the greater part of the national territory, and congress found it necessary to extend the section we are considering to that country. If the territory of the United States had been within the terms of the law, it would have been in force in the Indian country before the act of 1834, and that enactment would have been unnecessary. The ordinance of 1787, for the government of the North West Territory, establishing the first of the territorial governments, contains the following clauses :

" The governor and judges, or a majority of them, shall adopt and publish in the district such laws of the original States, criminal and civil, as may be necessary and best suited to the circumstances of the district, and report them to congress from time to time; which laws shall be of force in the district until the organization of the general assembly therein, unless disapproved by congress, but afterward the legislature shall have authority to alter them as they shall think fit."

" For the prevention of crimes and injuries, the laws to be adopted shall have force in all parts of the district, and for the

execution of process, criminal and civil, the governor shall make proper divisions thereof, and he shall proceed from time to time, as circumstance may require, to lay out the parts of the district in which the Indian titles shall have been extinguished, into counties and townships; subject, however, to such alterations as may here-after be made by the legislature."

Ample power was conferred upon the North West Territory to enact a full code of civil and criminal laws, subject only to the limitations contained in the ordinance itself. If the power should be abused, congress could disapprove the laws enacted, the right to do so being expressly reserved in the ordinance. By act of August 7, 1789 (1 Stat. 51), after the present constitution was adopted, congress continued this ordinance in force, but did not restrict the powers of the territorial government, and, therefore, those powers remained as before, with some changes not material to our present inquiry. This ordinance subsequently became the organic law of Illinois, Indiana, Michigan, Mississippi, and Alabama Territories, which were established after the act of 1790 was passed. The language of the ordinance above set forth, undoubtedly conferred authority to enact the law of homicide, and from this it sufficiently appears that congress did not propose to exercise that authority directly and by its own act. Congress certainly did not intend to confer upon these territories authority to do that which it purposed to do or had done itself, and which, being done by congress, could not be modified or in any manner affected by the territories. If the law under consideration was the law of homicide in Illinois and the other territories last named, why should congress confer upon those territories authority to legislate upon that subject? Any law enacted by either of those territories in virtue of such authority in that case, so far as it should correspond with the federal law, would have been unavailing, and so far as in conflict with the federal law, it would have been void because of its repugnance thereto. Indeed, we cannot conceive that congress would confer

upon any territory authority to legislate upon any subject upon which it had previously spoken in such territory. The fact that authority is given to a territory to enact laws upon any subject is convincing proof that, in the opinion of congress, no federal law obtains in such territory upon such subject. From the fact that congress conferred upon Illinois and the other territories last named power to enact a law of homicide, we may fairly infer that, in the opinion of that body, the act of 1790 did not provide such law for the government of those territories.

Again, in an act respecting Florida Territory (4 Stat. 164) in defining the jurisdiction of the superior courts of that territory, it is declared that they "shall have and exercise original and exclusive jurisdiction of all crimes and offenses committed against the laws of said territory, where the punishment shall be death." In this country murder is commonly punished with death, and we do no violence to language when we say that that crime was referred to in the clause we have cited. If so, the law of homicide in that territory was provided, not by the act of 1790, but by act of the territory. It appears to us that congress has always acted in the belief that the territory of the United States is not a place or district of country under the sole and exclusive jurisdiction of the United States, within the meaning of the law under consideration. An examination of the laws of the United States respecting the territories discloses the theory upon which congress has always acted, which is, that in the exercise of its undoubted right to govern the territories, that body, deeming it inconvenient or inexpedient to provide municipal laws for the territories, directly and by its own act, erected territorial governments, and delegated to them authority to enact such laws. *Leitensdorfer* v. *Webb*, 20 How. 176. Usually all restrictions upon the powers of a territorial government are found in the organic law by which it is established, but sometimes, as in the law punishing bigamy in the territories, and the law prohibiting slavery and some other acts, this rule has not been followed. In every instance in which congress has

provided a law for the government of the territories by its own act, the intention that such law shall operate within the territories is clearly expressed. Ample governmental powers being conferred upon the territories wherein congress withholds authority, or revokes the authority which it has before conferred, the intention so to do is plainly expressed.

Since the ordinance of 1787 was disused, the language in which legislative power has been conferred upon territories is similar to that found in our own act, which is :

" The legislative power of the territory shall extend to all rightful subjects of legislation, consistent with the constitution of the United States and the provisions of this act."

More comprehensive language than this could not have been used, and we cannot doubt that it was designed to confer as full authority as that used in the ordinance. Unquestionably the powers conferred upon territories recently established are as full and complete as were those of the territories established under the ordinance. As the power to legislate upon the subject of homicide was conferred by the ordinance, so also it is conferred by our own act, and this, as we have seen, excludes the notion that the law of homicide in this territory is to be found in the act of 1790. Whenever congress shall determine to enact municipal laws for the territories, upon any subject, we believe that as heretofore the intention so to do will be clearly expressed ; that congress has not yet entered upon this work is entirely certain. We can find no law of homicide provided by congress to be enforced in this territory ; whenever such law shall be enacted, it will be the duty of all officers of justice to obey and enforce its provisions.

The act of 1790 operates within forts, arsenals and like places within this territory, because such places are described in that act ; and in the Indian country, because it is there made effectual by the act of 1834, and also because the sixteenth section of our organic act declares it shall have the same force and effect in all these places as

elsewhere within the United States, but we cannot say that the entire territory is a place or district of country under the sole and exclusive jurisdiction of the United States, as described therein. As the laws of congress can be better enforced than those of the territory, we would be glad to adopt a different view if it were possible to do so, but we cannot indulge our wishes or preferences in opposition to the law. It was said at the bar that, inasmuch as the greater part of this territory, including the county of Gilpin, was formerly Indian country, and at that time the act of 1790 was enforced therein, that act has remained in force notwithstanding the territory has ceased to be Indian country. It is not necessary to demonstrate the fallacy of this proposition. As the law attached because of the character of the territory, whenever the territory was divested of that character, it thereupon ceased to operate therein. It was also said that, at the time of the offense, Gilpin county was in fact in the Indian country. If so, the fact should have been averred in the indictment, and, in the absence of such averment, the court could not take jurisdiction upon that ground.

Because there is no averment in this indictment as to the jurisdiction of the United States in the place where the crime was committed, the judgment of the district court is reversed.

*Reversed.*