## UNITED STATES OF AMERICA v. KAUCHI MOTO-HARA.

## UNITED STATES OF AMERICA *v.* MATSUNAGA.

### November 20, 1911.

1. *Evidence—Judicial notice—Executive orders:* The court takes judicial notice of executive orders of the President of the United States reserving lands within its jurisdiction for military purposes.

2. *United States courts—Jurisdiction—Military reservations:* The United States District Court for the District of Hawaii has jurisdiction of an assault committed upon a military reservation in the Territory of Hawaii. The words "exclusive jurisdiction of the United States" (Penal Code, sec. 272, subdiv. third) construed.

*Criminal Law:* Indictment under Penal Code, section 276.

*R. W. Breckons,* U. S. District Attorney, for the United States.

*A. K. Ozawa* for defendant Kauchi Motohara.

*A. L. C. Atkinson* for defendant Matsunaga.

CLEMONS, J. In the case of Motohara, the indictment charges the defendant with an assault with a deadly weapon (Penal Code, sec. 276), committed "within and upon certain lands reserved and acquired" and "held and owned by the

United States of America for the exclusive use of the United States of America and under the exclusive jurisdiction thereof, to-wit, certain lands reserved and acquired by the said United States and then and there held and owned by it for military purposes on the island of Oahu, within the Territory and District of Hawaii, and within the jurisdiction of this court."

[1] The prosecution adduced evidence showing the alleged act to have been committed on a military reservation known as "Schofield Barracks," situate on the island of Oahu, Territory of Hawaii, this land having been, as was also shown, and as the court takes judicial notice, set aside by executive order dated July 20, 1899, and amended November 15, 1909. At the close of the government's case, the defendant moved for his discharge by reason of the court's want of jurisdiction.

[2] The statute upon which this indictment is based, so far as jurisdiction is concerned, is section 272 of the penal code, providing punishment for certain offenses, including assault, committed in the following places, among others:

"When committed within or on any lands reserved or acquired for the exclusive use of the United States, and under the exclusive jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dock-yard, or other needful building."

The latter clause of the section would seem to apply not to Territories, but to places "purchased or otherwise acquired" within the limits of States, and evidently was inserted to provide for those places, within State limits, contemplated by section 8 of Article 1 of the Constitution. *Territory v. Carter,* 19 Haw. 198, 199; *Reynolds v. People,* 1 Colo. 179, 181; *Franklin v. United States,* Id. 35, 38-39. The indictment must, therefore, be justified, if at all, by the first clause of the section, relating to "lands reserved or ac-

quired for the exclusive use of the United States, and under the exclusive jurisdiction thereof."

It is admitted that the place of the assault was land reserved and acquired for the exclusive use of the United States," but the contention is that this is not a place "under the exclusive jurisdiction thereof" within the meaning of the statute.

The Organic Act, sec. 6, 31 Stat. 142, gives jurisdiction to the Territorial courts of Hawaii, in ordinary cases, and in *Territory v. Carter,* 19 Haw. 198, it has been held that the Territorial courts have jurisdiction of an assault committed on a naval reservation.

Would the fact that the Territory might have jurisdiction (without, however, intimating an opinion), negative the exercise of jurisdiction by the Federal government? It would if the words "exclusive jurisdiction" were used in the narrow sense of, *"so long as,* or *while,* the Federal courts as distinguished from the Territorial courts, are exercising jurisdiction without Congress' having conferred it wholly or partially upon the Territorial courts or without Congress' having permitted its exercise by the Territorial courts." But it would not, if the words "exclusive jurisdiction" mean merely to indicate lands which the United States has acquired for its exclusive use in places which are within its exclusive control, whether it be exercising that control directly by legislation of Congress, or indirectly by legislation which it permits the Territory to enact and the Territorial courts to enforce, or indirectly by continuing in operation local laws which Congress can repeal at any time. A use of the word jurisdiction in the latter sense seems to have been in the mind of the court in several instances.

Mr. Justice Field says, in *Fort Leavenworth R. R. Co. v. Lowe,* 114 U. S. 525, at 526:

"The land constituting the reservation was part of the territory acquired in 1803 by cession from France, and, until the formation of the State of Kansas, and her admission

into the Union, the United States possessed the rights of a proprietor, and had political dominion and sovereignty over it. For many years before that admission it had been reserved from sale by the proper authorities of the United States for military purposes, and occupied by them as a military post. *The jurisdiction of the United States over it during this time was necessarily paramount.*"

Also, at 538, Mr. Justice Field quotes from a New York decision:

"If the United States had the right of exclusive legislation over the Fortress of Niagara [as the United States has over Schofield Barracks], they would have also exclusive *jurisdiction.*"

The same language is quoted in *Baker v. State,* 47 Tex. Cr. 482, at 485.

See, also, *Reynolds v. People,* 1 Colo. 179, at 182,

Mr. Justice Story in *United States v. Cornell,* 25 Fed. Cas. 648, says that "exclusive jurisdiction is the attendant upon exclusive legislation," and also says, by implication, that exclusive jurisdiction and exclusive legislation "import the same thing." Attorney General Knox, in 24 Ops. Atty. Gen. 617, 619, regards the words "exclusive jurisdiction" and "exclusive legislation" as synonymous. See, also, 26 Ops. Atty. Gen. 94, as to the "paramount authority" of Congress.

A use of the word "jurisdiction" in the sense of "political jurisdiction" is made in the *Lowe* case, 114 U. S. at 531, and in a Missouri decision it is said that "jurisdicton  .  .  . signifies the *authority* to declare, and the power to enforce the law, as well as the territory within which such power and authority may be exercised.   .  .  .   The jurisdiction of a State is coextensive with its *sovereignty.*" *Sanders v. St. L. & N. O. Anchor Line,* 3 L. R. A. 390, 391, 97 Mo. 26, 10 S. W. 595, 597. Jurisdiction is, thus, coextensive with authority and sovereignty.

In *Gon-Shay-Ee, Petitioner,* 130 U. S. 343, 352, it is said:

"This phrase, 'within the exclusive jurisdiction of the United States,' is well understood as applying to the crimes

which are committed within the premises, grounds, forts, arsenals, navy-yards, and other places within the boundaries of a State, or even within a Territory, over which the federal government has by cession, by agreement, or by reservation exclusive jurisdiction. Those cases are tried by circuit or district courts of the United States, administering the laws of the United States, and not by the courts of the State or those of the Territory."

This view is also suggested by the language of the court in *Burgess v. Territory*, 8 Mont. at 66-67, 19 Pac. at 560-561, where, however, the court upholds the jurisdiction of the Territorial courts. A reference to the case of *Grafton v. United State*, 206 U. S. 333, 354-355, is pertinent, and to the case of *United States v. Perez*, 3 U. S. Dist. Ct. Haw. 295, 298, in which the words "jurisdiction of the United States" are used in this broad sense.

Of course, in the broad sense of the words, the whole Territory of Hawaii is within the jurisdiction of the United States, but, in answer to a possible adverse argument it may be said that that fact would not give the United States courts jurisdiction everywhere throughout the Territory under section 272 of the Penal Code; for, to come within its provisions, the lands must also be those reserved or acquired, as they were in the case at bar, "for the exclusive use of the United States." But when once exclusive use and exclusive jurisdiction of the United States concur, then the courts of the United States may try offenses committed in such places.

It may be noted, also, in support of the suggested broad signification of the words in question, that the statute does not, as defendant's contention would imply, limit them to "exclusive jurisdiction" of the United States *courts,* but applies them unqualifiedly to "exclusive jurisdiction" of the United States government.

Madison, in the Federalist, letter No. XLIII, pointed out the necessity of *Federal* control over certain places including the seat of government, forts, etc. Though he referred

to the provision of Article I, section 8, of the Constitution, which applics to States, the same necessity would apply to military reservations in Territories, and Congress may fairly be presumed to have so intended in enacting section 272 of the Penal Code, which not only gives jurisdiction in case of forts within the limits of States where the State has consented to the acquirement of the land, but also gives jurisdiction in case of places described in language general enough to include forts or military reservations in places other than States.

It would seem that the words "under the exclusive jurisdiction" are used to exclude States and to contemplate especially the District of Columbia (see Rev. Stat. sec. 2145) and other territory of the United States, as distinguished from places within States used for forts and other purposes and provided for by the latter part of clause third of section 272.

Some support is lent to the foregoing view by the fact that statutes in existence from the earliest times, which the present law was intended to codify, apparently regarded places of this kind, to-wit, "forts, arsenals, dock-yards, magazines," as being places "under the sole and exclusive jurisdiction of the United States." Act of April 30, 1790, 1 Stat. 113, et seq. See *Franklin v. United States*, 1 Colo. 35, 36, 37-38, 42-43. Rev. Stat. sec. 5339. For, in the earlier statutes, the use of the word "other" in the expression "other places under the exclusive jurisdiction," or similar expressions, would seem to give color to the preceding places enumerated in the context and bring them also within the same "exclusive jurisdiction." The principle of *noscitur a sociis* would support this construction. Indeed, it is difficult to see what places can be intended by the portion of the statute in question, if not places of the kind here shown, —military reservations.

Having thus indicated my view of the question, some

authorities cited in support of an opposite conclusion should be considered.

The opinion of Attorney General Cushing holds that under a statute covering offenses committed within a fort or other building or place, the site whereof is "ceded to, and is under the jurisdiction of the United States," the Federal courts would not have jurisdiction in an organized Territory, but his opinion is influenced by the fact that "the apparent sense of the act" is to apply to cessions made by States. 7 Ops. Atty. Gen. 564. Mr. Cushing, in a later opinion, says, "I will not undertake, until the question arises, to determine whether in a military or other reservation within a Territory, the legislative jurisdiction of Congress be complete and exclusive or not." Id. 574.

The case of *Burgess v. Territory,* 8 Mont. 57, 19 Pac. 558, is authority only for the jurisdiction of Territorial courts, though its reasoning would seem to exclude Federal jurisdiction. It relies mainly on Mr. Cushing's opinion discussed above.

The case of *Reynolds v. People,* 1 Colo. 179, also supports Territorial jurisdiction but indicates a view of Federal jurisdiction in the broad sense, Id. 182, and, affirms *Franklin v. United States,* Id. 35, which clearly indicates that the United States would have jurisdiction. Id. 37, 38, 42-43.

The opinion of Solicitor-General Hoyt, 26 Ops. Atty. Gen. 91, only supports local jurisdiction in case of a military reservation in the Philippines, where there is no Federal court, but suggests nothing as to jurisdiction where Federal courts are provided.

The case of *Territory v. Carter,* 19 Haw. 198, supports local jurisdiction, but goes no further.

These authorities, upon analysis, lend little, if any support to jurisdiction of Territorial courts to the exclusion of that of Federal courts.

The only case found which passes directly and squarely

upon the point here involved, *Scott v. Wyoming*, 1 Wyo. 40, rules in support of Federal jurisdiction, though it is weakened by want of discussion or statement of its reasons.

While realizing that if we construe the words "exclusive jurisdiction" as not giving the United States jurisdiction where it has parted with any of its jurisdiction to a subordinate Territory, the motion might be granted, nevertheless these words in an unqualified sense mean the power and authority of the United States, whether partly exercised through its subordinate, or not, and I find nothing to justify my qualifying them in any way.

In accordance with the foregoing views, the motion to dismiss is denied.

---

The foregoing opinion disposes of the case of Matsunaga, in which the defendant interposed a demurrer on the ground of want of jurisdiction,—the offense charged being larceny (Penal Code, sec. 287), committed in a place identical in description with that described in the indictment in the Motohara case.

The demurrer is, accordingly, overruled.