## IN RE MURPHY.

CRIMINAL LAW — BIGAMY — STATUTES — CONSTITUTIONAL LAW— OFFENSE AGAINST TWO SOVEREIGNTIES—CONGRESSIONAL AND TERRITORIAL LEGISLATION.

1. The statute of the territory defining and punishing the crime of bigamy (L. 1890, Chap. 73, Sec. 74) was a valid law when enacted, and by virtue of the enabling act and the constitution, became and still is the law of the State.

2. Under that statute bigamy is an offense punishable by the State.

3. The fact that Congress had enacted a law defining and punishing bigamy in the territories, and other places over which the United States has exclusive jurisdiction, did not restrict or impair the right of the legislature of the territory to define and provide a punishment for bigamy as an offense against the territorial sovereignty and its laws.

4. It is not a sound contention that the territorial statute was invalid because the same act was punishable as a crime under the laws of the United States, and therefore, if both laws were in force, the person committing the crime would be subject to punishment twice for the same offense, for the reason that while the federal government could punish the act as a crime against it while at the same time it was competent to make it punishable as a crime against the territory. In this respect there is no distinction between a State and territory in their respective relations to the general government.

5. The congressional statute constituted bigamy a crime against the United States, and not an offense against the territory or its laws, and did not cover the entire subject of legislation for the territories so as to supersede the territorial law upon the same subject or restrict the right of territorial legislation upon it, so long as the law of the territory did not conflict with the punishment of said crime by the United States and did not purport to offer immunity to persons committing such crime.

[Decided May 29, 1895.]

RESERVED QUESTIONS from the District Court for Albany County.

James E. Murphy, having been held to answer for the crime of bigamy, and being held in custody by the sheriff of Albany county under a commitment issued by the examining magistrate, applied to the district court for writ of habeas corpus. Upon submission of the matter to the court on the issue raised by a demurrer to the return of the sheriff to the writ requiring him to show the cause of the restraint of the prisoner, certain questions were reserved to the Supreme Court for its decision. Such questions and the entire facts in the case are recited in the opinion.

*Nellis E. Corthell,* for the petitioner.

The territorial statute with reference to bigamy never went into effect, and therefore is not a law of the State, as the act of congress covered the same ground. This results because: 1. From the provision of the Federal constitution that no man shall be subject for the same offense to be twice put in jeop-

ardy. (Art. 5, Amendments.) 2. From the congressional statute giving the United States exclusive jurisdiction in all cases of offenses cognizable under its laws. (U. S. Rev. Stat., sec. 711.). 3. Because, in the territories, congress has plenary legislative power, exercising both the Federal and State powers of government, for the people of the territories. (Houston v. Moore, 5 Wheat., 21; Com. v. Felton, 101 Mass., 204; Com. v. Tenney, 97 id., 50; People v. Fonda, 62 Mich., 401; U. S. v. Kagama, 118 U. S., 375; Bank v. Yankton, 101 U. S., 129; Snow v. U. S., 18 Wall., 317.) The distinction between Federal and State jurisdictions has no foundation in territorial governments. (Benner v. Porter, 9 How., 242; Downes v. Parshall, 3 Wyo., 426; Bradford v. Terr'y, 1 Okl., 366; In re Lane, 135 U. S., 443.) Congressional enactment supersedes all territorial laws on the subject. (Nelson v. U. S., 30 Fed., 115; Kie v. U. S., 27 id., 356; Davis v. Beason, 133 U. S., 333; U. S. v. Clark, 46 Fed., 636; Franklin v. U. S., 1 Colo., 40.) A void law is no law. (Cooley Const. Lim., 222; Van Schaack v. Robins, 36 Ia., 203; Draper v. Folley, 33 Ind., 465; State v. Benton, 33 Neb., 823; Stingle v. Nevel, 9 Or., 62; Maxwell v. State, 89 Ala., 150; Arnoult v. New Orleans, 11 La. Ann., 56.

*C. W. Bramel,* prosecuting attorney, contra.

Bigamy was a rightful subject for territorial legislation. Two laws, each describing the same act as a crime and prescribing a penalty therefor, are not inconsistent. (Moore v. People, 14 How., 13; Fox v. Ohio, 5 How., 411.) The policy of the United States towards the territories is manifested in Reynolds v. U. S., 98 U. S., 145; Clinton v. Englebrecht, 13 Wall., 434. They hold that, in a territory, its laws govern the procedure of courts. The State adopted the bigamy statute as a law of the State by declaring all laws of the territory not repugnant to the constitution to be in full force and effect. (L. 1890-91, chap. 35.) The bigamy statute was thereby revived, even if it had been suspended by the congressional legislation on the same subject. (Sturgis v. Spofford, 45 N. Y., 446; Com'rs v. Steamship Co., id., 609; State v.

Kibling, 63 Vt., 636.) If there is no statutory provision, the common law in relation to bigamy is in force in the State. (R. S., sec. 498; 4 Blackstone, 163; 1 Russel on Cr., ch. 23; 2 Kent Com., 69; State v. Pulle, 12 Minn., 164.)

POTTER, JUSTICE.

On the 20th day of February, 1895, James E. Murphy filed in the district court of Albany county his petition for the writ of habeas corpus, questioning the legality of his restraint in the jail of that county by the sheriff thereof. The cause of the restraint, as alleged, is a commitment issued by a justice of the peace; and it is alleged that the justice had no jurisdiction of the offense charged against the petitioner, and that no offense against the laws of this State has been charged against him.

A reference to the commitment, a copy of which is attached to the petition, discloses the fact that the petitioner was, after examination upon complaint filed before the justice, held to answer to the district court for the crime of bigamy, committed on the 28th day of March, 1891.

The writ was issued upon order of the district judge, and the sheriff returned that he had the petitioner in his custody at the jail of said county by virtue of the said commitment; a copy of the complaint or information filed with the justice of the peace is also attached to the return, by which it was charged that the petitioner on January 22, 1881, in Albany county, Wyoming, did marry one Lillie C. Rauch, a woman, and on March 28, 1891, at said county and State did marry one Alice Warren, the said Lillie C. to whom he was married in 1881 being alive, the bond of matrimony between them being still existing and undissolved and no legal presumption of her death having arisen.

A demurrer was filed to the return of the sheriff and upon this pleading the issues raised were submitted to the court.

Thereupon the district court made and entered an order reserving and sending said cause to this court for its decision upon certain questions certified therein to be difficult and important, viz.:

1. Is the act of bigamy, as defined in section 74 of chapter 73 of the Session Laws of Wyoming of 1890, being a part of the act of the legislature of the Territory of Wyoming, approved March 14, 1890, committed March 28, 1891, within the State of Wyoming, an offense now punishable under the laws of said State?

2. Did the legislature of the Territory of Wyoming at the time of the passage of the act of March 14, 1890, above referred to, have power to enact section 74 of chapter 73 of the laws of 1890, mentioned in the last preceding question?

3. If the enactment of said section 74 of chapter 73 of the laws of 1890 was not within the power of the legislature of the Territory of Wyoming, did said section at any time thereafter come into force or become operative in the Territory of Wyoming or in the State of Wyoming, and, if so, when?

4. Is said section 74 of chapter 73 of the laws of Wyoming of 1890 now in force as a part of the laws of the State of Wyoming?

It is apparent that the same ultimate question is the result of each of the four propounded by the court, viz.: Is section 74 of chapter 73 of the laws of the Territory of Wyoming defining the crime of bigamy and providing a punishment therefor now in force in this State, that being the only statutory provision we have touching that offense. It is conceded, as it must be, that if that section was valid when enacted, and was a valid law of the territory, it became and was in force as a law of the State by virtue of the provisions of the enabling act and the State constitution, each of which expressly continued as the laws of the State all the laws of the territory in force at the time of the admission of the State, and said section had not been repealed by any law of the territory, nor has it been by any statute of the State. Our inquiry is therefore directed to an examination consideration of the question whether, in the first place, the law was a valid enactment by the territorial legislature, and if not, in the second place, is it the law of the State.

It must be confessed at the outset that this presents an inquiry of no little difficulty, and the field to be covered in

a proper and comprehensive consideration thereof is an amazingly large one.

The section of the statute to which our attention has been invited, reads as follows:

"Whoever being married, marries again, the former husband or wife being alive, and the bond of matrimony being still undissolved and no legal presumption of death having arisen, is guilty of bigamy, and shall be imprisoned in the penitentiary not exceeding five years."

At the time this statute was enacted, there existed a law of congress punishing bigamy in all the territories, in the following language:

"Every person who has a husband or wife living who, in a territory or other place over which the United States have exclusive jurisdiction, hereafter marries another, whether married or single, and any man, who, hereafter simultaneously, or on the same day, marries more than one woman in a territory or other place over which the United States have exclusive jurisdiction, is guilty of polygamy and shall be punished by a fine of not more than five hundred dollars and by imprisonment for a term of not more than five years; but this section shall not extend to any person by reason of any former marriage whose husband or wife by such marriage shall have been absent for five successive years, and is not known to such person to be living, and is believed by such person to be dead, nor to any person by reason of any former marriage which shall have been dissolved by a valid decree of a competent court, nor to any person by reason of any former marriage which shall have been pronounced void by a valid decree of a competent court, on the ground of nullity of the marriage contract." 22 U. S. Stat. at Large, 30.

The act of congress enacting this section was approved March 22, 1882, and was amendatory of section 5352 of the Revised Statutes of the United States, which defined and provided a punishment for bigamy in the territories and other places over which the United States have exclusive jurisdiction; the change by the amendment being that part covering the case of marriages by a man to more than one woman

simultaneously or on the same day, and the addition of the requirement that in the case of the absence of the former husband or wife for five successive years, the person marrying again shall believe the other to be dead.

The contention on behalf of the petitioner is that the act of congress covered the same ground as the territorial statute, and deprived the territory of the power to legislate on the subject, at least to the extent covered by the Federal statute, and that so far as the territorial statute relates to the offense of bigamy it never went into effect, and it is affirmed this results: first, from the constitutional provision of the United States that no person shall be subject for the same offense to be twice put in jeopardy; second, from the law of congress giving the United States courts exclusive jurisdiction in all cases of offenses cognizable under the laws of the United States, and, third, because in the territories congress has plenary legislative power, exercising both the Federal and State powers of government for the people of such territories. These reasons are urged with much force, and it would seem that if by holding the territorial statute to have been valid, it would necessarily result in subjecting the same person for one offense to be twice put in jeopardy, or if congress had fully covered the entire subject for the United States and the territory as well, in its dual capacity as possessing not only Federal authority but as doing for the territories what the people of the States may do for themselves, the argument would assume great strength, if it would not conclusively establish the correctness of the position taken by counsel and so ably presented.

Upon a very thorough research we are unable to discover that the precise question involved in this issue has been decided by any court, although one case hereinafter cited approaches it quite closely, and in one other at least, in the United States Supreme Court, some light is shed upon it.

The proposition that the law of congress confers upon the United States courts exclusive jurisdiction in all cases of offenses cognizable under the laws of the United States, is not entitled to much weight; those provisions are not applicable

to the territories. In the section referred to (Sec. 711, U. S. Rev. Stat.) the jurisdiction vested in the courts of the United States is made exclusive of the courts of the several States, as to all crimes and offenses cognizable under the authority of the United States; and by another section (Sec. 629, subdivision 20) circuit courts are given "exclusive cognizance of all crimes and offenses cognizable under the authority of the United States except where it is or may be otherwise provided by law, and concurrent jurisdiction with the district courts of crimes and offenses cognizable therein." The provisions of section 711 surely have no reference to the territories, the latter are not States, and with respect to subdivision 20 of sec. 629, jurisdiction of crimes and offenses under the laws of the United States committed in a territory is otherwise provided by law—such jurisdiction being expressly vested in the territorial courts. It is now well settled that such courts are not United States courts. Clinton v. Englebrecht, 13 Wall., 434. "They are courts of the territories, invested for some purposes with the powers of the courts of the United States." Reynolds v. United States, 98 U. S., 145. The territorial courts therefore did not possess any jurisdiction of crimes against the Federal government because they were United States courts, nor because of the provisions of sections 629 or 711, Revised Statutes U. S. No United States court properly so called had any jurisdiction in the territory. The provisions referred to and thus relied on are not controlling in the question before us or indeed at all persuasive.

If there is any controlling force in the contention of counsel which will compel a court to declare that no law punishing bigamy exists in this State, by reason of the invalidity of the territorial act, it resides either in the argument that the person offending might be twice put in jeopardy for the same offense if both the law of congress and of the territory were in force, or that congress being supreme has fully covered the subject and thus deprived the legislature of the territory of all power to legislate upon it.

The constitutional provision against a second jeopardy invoked here, and the general principle which refuses the right

to place one twice in jeopardy, does not inhibit the twice putting in jeopardy for the same act, but for the same offense. That, by one and the same act, a person may offend and violate the laws of more than one sovereignty to whom he owes allegiance and may be punishable under the laws of each such sovereignties is well settled, and upon reasoning which appears to us entirely sound not only but merits our approval as emanating from many courts of high distinction and acknowledged ability. Fox v. Ohio, 5 How., 410; Moore v. Illinois, 14 How., 13; 1 Bish. Crim. Law (5th Ed.), 178, 179, 987, 989; Chess v. State, 1 Blackf. (Ind.), 198; State v. Antonio, 3 Brev. (S. C.), 562; Harlan v. People, 1 Doug. (Mich.), 207; Commonwealth v. Fuller, 8 Metc., 313; Sutton v. State, 9 Ohio, 133; Sizemore v. State, 3 Head., 26; · Jett v. Commonwealth, 18 Grat., 933; State v. McPherson, 9 Ia., 53.

Case of Slave Amy—opinion of Chief Justice Taney, reported in 14 Md., 149.

In Moore v. People of Illinois, supra, Justice Grier used the following language: "Every citizen of the United States is also a citizen of a State or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offense or transgression of the laws of both. Thus, an assault upon the marshal of the United States, and hindering him in the execution of legal process is a high offense against the United States, for which the perpetrator is liable to punishment; and the same act may be also a gross breach of the peace of the State, a riot, assault, or a murder, and subject the same person to a punishment under the State laws, for a misdemeanor or felony. That either or both may (if they see fit) punish such an offender, cannot be doubted. Yet it cannot be truly averred that the offender has been twice punished for the same offense; but only that by one act he has committed two offenses, for each of which he is justly punishable."

This is a clear and unmistakable expression of the law that one act may constitute at the same time an offense under the laws of two jurisdictions, and that although both may punish, the culprit has not been twice punished for the same offense.

In this connection we do not perceive any distinction upon principle, whether the designation of the offense is the same in both cases. That there is no such distinction deserving of recognition is shown· by those decisions respecting the right of the several States to punish the crime of counterfeiting the coin of the United States although the same crime by the same name is defined and punishable under the laws of the United States. Fox. v. State of Ohio, 5 How., 410, and other cases above cited.

This has repeatedly been the holding of the courts, and to demonstrate the difference existing between this class of offenses and some others in which such right or power of the State has been denied and that the denial of such power is not generally based upon the proposition of second jeopardy it may be instructive to advert to another offense which has attracted the attention of the courts. Since the passage of the National Banking Act by congress, which among other provisions contained one punishing embezzlement by an officer of such a bank, it has been held in several States that under the embezzlement statutes thereof such officer could not be punished for that crime in cases where the same crime was included in the offense punishable under the act of congress. In every case which we have been able to examine, the lack of power in the State in the respect indicated was placed squarely upon the provisions of sections 629 and 711 of the Revised Statutes of the United States above referred to, and the fact that as to jurisdiction over such crime no other provision had been made by congressional law. Now as to counterfeiting, the definition thereof and punishment therefor is found in title 70 of the Revised Statutes, which in sec. 5328 under chapter one of said title, provides: "Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States· under the laws thereof." And as no such provision appears in reference to the crime of embezzlement by a national bank officer, it has been held that the jurisdiction of the United States courts as to such crime is exclusive of the courts of the several States by virtue of sections 629 and 711, and it.is clearly to be observed that had

congress provided as to such crime as it had in relation to others in title 70 the same courts would not have relinquished their right to punish the same offenses any more than in the case of counterfeiting. The purpose in thus calling attention to these cases is simply to illustrate that it is only when congress has expressly made the jurisdiction of their own courts exclusive that the State courts refuse to themselves the power to punish offenses also cognizable under the authority of the United States. People v. Fonda, 62 Mich., 401; Commonwealth v. Luberg, 94 Pa. St., 85; Commonwealth v. Fenton, 101 Mass., 204.

In Commonwealth v. Fuller, 8 Metc., 313, the learned justice delivering the opinion, said: "In regard to crimes which existed prior to the constitution, and were the subject of State legislation, or were punishable as offenses at common law, and the prevention of which is essential to the peace and good order of the community, though such crimes are also forbidden by the constitution of the United States, and the authority to punish the commission of them is conferred by congress upon the Federal courts; still, unless such grant of power is exclusive, by the terms of the constitution, or is made exclusive by acts of congress, the concurrent right of the State courts to try persons accused of such crimes is not necessarily taken away."

It should perhaps be here observed in connection with what has already been stated as to embezzlement, that another element entered into the consideration of such cases, viz.: that such crime was not a common law offense. In the case last cited also the court pays its respects to the proposition that the State law was unconstitutional because it subjected the same person to the operation of two distinct laws upon the same subject, and inflicting different pains and penalties, and it holds that although a delinquent cannot be punished twice for the same offense, that the supposed repugnancy between the several laws does not, in fact, injuriously affect any individual, but that the offender runs the hazard under which jurisdiction he may be subjected to punishment; and that while the proviso in the act of congress which we have men-

tioned remains unrepealed the criminal cannot be thus exposed; as the court which first exercises jurisdiction has the right to enforce it by trial and judgment by the well established principles of law relating to the jurisdiction of courts.

Bishop, in his work on Criminal Law, in discussing this question after announcing the doctrine of the validity of the laws of the State in such cases, refers to the result thereof, and states that although the rule best sustained is that the jeopardy under one government is not a good plea in defense to an indictment under the other, the courts of either government will give a sort of practical effect to a judgment of acquittal or conviction in those of the other government, as far as their forms of procedure will permit, though the constitutional provision does not bind them to do so; and that the better opinion seems to be that after the tribunals of the one government dealt with an offender, those of the other will decline prosecution, or in some way suffer the defendant to avail himself of this matter. He adds, however, "at the same time there is much just weight in the consideration, that if a man, though by one act, has violated the laws of two governmental powers, it is proper both should punish him."

A terse but instructive disquisition in this regard is found in the opinion of Chief Justice Taney in "The case of the Slave Amy, charged with robbing the U. S. mail," reported in full as a note to the case of Negro Ann Hammond v. The State, 14 Md., 149.

He says: "In maintaining the power of the United States to pass this law, it is, moreover, proper to say, that as these letters, with the money within them, were stolen in Virginia, the party might undoubtedly have been punished in the State tribunals, according to the laws of the State, without any reference to the postoffice or the act of congress, because from the nature of our government, the same act may be an offense against the laws of the United States, and also of a State, and be punishable in both," . . . . "and the punishment in one sovereignty is no bar to his punishment in the other."

"Yet in all civilized countries it is recognized as a fundamental principle of justice, that a man ought not to be

punished twice for the same offense. And if this party had been punished for the larceny by a State tribunal, the court would have felt it to be its duty to suspend sentence, and to represent the facts to the president, to give him an opportunity of ordering a nolle prosequi, or granting a pardon."

If, then, we were to attempt to formulate a rule which seems to be the result of the weight of authority upon the power of a State to punish the same offense under its laws, which is also punishable under the laws of the United States, it would be that as to any crime which was punishable as at common law or by the States before the adoption of the constitution, the courts of the States have concurrent jurisdiction with the courts of the United States in the absence of an express destruction of the jurisdiction of the State courts by act of congress; and that any statute of the State in such case assuming to punish such a crime is not invalid because it may seem to subject a criminal to a prosecution and sentence under both the law of the State and United States: and further that in the interest of justice after a man has been tried for the offense in the court of the one government the courts of the other for the same act would, within the scope of their authority in some way suffer the accused to obtain the benefit of the former trial whether thereon he had been convicted or acquitted; although such courts would not be absolutely bound to extend such advantage to the offender.

Having determined the relation existing in this respect between a State and the Federal government, we are confronted with the necessity of determining whether the same relation exists between a territory such as Wyoming was and the general government, or whether the situation is so much different with a territory as to exclude from our consideration the results arrived at when a State law punishes the same offense as the United States law. As already indicated, the provisions of the judiciary act giving exclusive jurisdiction to the United States courts in all offenses cognizable under the authority of the United States are not applicable to such offenses committed within the territories. Neither do the pro-

visions of sec. 5328, R. S., which declare that nothing in that title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof affect the territories. We must look to the laws governing these latter governments for legislation, if any, which shall have bearing upon their right to prosecute the same offenses cognizable under the laws of the United States.

The character and powers of a territorial government and its courts have been fruitful of much judicial investigation. We have already adverted to the subject of its courts and shown that it is now too well settled to admit of argument that they are purely legislative or territorial courts in some of which have been vested jurisdiction to inquire into and try offenses against the United States.

The territories as organized by congress are given a local government with powers almost as extensive as those possessed by the States. They have a legislative department to enact laws, a judicial department to construe and enforce them and an executive to execute them. Subject to the constitution and laws of congress which stand as the fundamental law for the territories when and in so far as applicable they have a government in all respects full, adequate and complete. True, congress may legislate directly for them, although this power has seldom been exercised, it may annul or abrogate their laws; but the laws of the local legislature if not in contravention of the fundamental law are as valid and binding upon the people of the territory unless annulled or abrogated by congressional enactment as the laws of the State upon the people thereof. The grant of legislative power to the territories and so to Wyoming is found in section 1851 of the Revised Statutes of the United States, in these words:

"The legislative power of every territory shall extend to all rightful subjects of legislation not inconsistent with the constitution and laws of the United States. But no law shall be passed interfering with the primary disposal of the soil; no tax shall be imposed upon the property of the United States; nor shall the lands or other property of non-residents be taxed higher than the lands or other property of residents."

With this power of legislation so general, with undoubted authority thereunder to define and provide for the punishment of crimes and offenses, is there any distinction between such a government and a State in its relation to the United States concerning crimes with respect to the objection that if the act is punishable by both one is liable to be twice put in jeopardy? We are unable to perceive any. If such an objection is unavailing when assailing a law of a State which assumes to punish a crime for which the perpetrator is also amenable to a law of congress it cannot commend itself as effectual in attacking a similar or kindred territorial law. The territorial legislature has as complete authority fundamentally to enact the law and punish the crime especially if it be an offense punishable as at common law as the legislature of a State. The territory not only possesses as much power to protect its people in their peaceful avocations and guard them against the commission of those crimes which offend the moral sense and render property and life insecure, but it is as fully their duty to do so as it is of a State government. For that purpose they have been organized and invested with such enlarged powers and responsibilities.

We are therefore of the opinion that the fact that the law of Wyoming punishing bigamy might possibly have subjected an offender to a prosecution under the laws of the territory as well as the United States, is not a valid objection to the statute.

Every reason which disposes of that proposition or argument when used to attack the validity of a law of a State, is equally applicable to a territorial statute.

Some stress has been placed upon what may be called the Alaska cases, U. S. v. Clark, 46 Fed., 633, and cases therein cited. Those cases arose upon prosecutions for murder committed in Alaska, and the inquiry was presented, whether the law of the United States or that of Oregon prevailed as to that offense. Congress, in legislating for Alaska, had provided that the laws of Oregon in force on a certain date so far as applicable and not in conflict with the provisions of that

particular act of congress or the laws of the United States should be in force in Alaska.

The statutes of the United States provided for the punishment of murder in places under the exclusive jurisdiction of the United States. Those cases are not controlling. Alaska possessed no legislative power. Oregon was not given authority to legislate for that territory. The sole legislative authority over it resided in congress. All offenses punishable when committed there were offenses against and prosecuted in the name of the United States. Alaska was a place over which the United States had exclusive jurisdiction, in the meaning of that phrase when used in the acts of congress: whereas, it has been frequently, and we think universally, whenever that point has arisen, been held that such phrase used alone has no application to, and does not include the territories. Franklin v. U. S., 1 Colo., 35. But it is urged with considerable force that congress has by its legislation already alluded to covered the entire subject, and as a consequence thereof the territory was deprived of the authority to legislate thereon at all, or to define or provide for the punishment of bigamy.

Some of the foregoing observations are of interest in an investigation of the question thus presented. We must recognize that the United States was the supreme power, that congress could legislate directly for the territory; that its enactments were the superior laws, if applicable here. Did congress by its bigamy legislation cover the entire subject so as to take away or impair the right or power of the territory to legislate thereon? If so, then our law was invalid. We have noticed the effect in a State where there is no exclusive jurisdiction given to the United States courts, and that although the law of congress actually covers and provides for the same subject, and rightfully so, and such Federal power is superior, so far as that goes, to the State authority; nevertheless, the State law is valid and its courts may enforce it.

With the territories the authority and law making power in congress is of course much more comprehensive. But, however, this may be, we apprehend that there exists a marked

division between the methods employed by congress, and after the grant of authority to the territory, even between its own powers of legislation. It may, it is true, legislate directly for the territories. When it does so, it not only says so, but makes such legislation the law of the territory per se.

Now, there are two classes of crimes which may be committed in a territory: Those in violation of the laws of the United States and those offending against the laws of the territory. These two classes are recognized by congress. By section 1894, U. S. Revised Statutes, provision is made for the payment of the expenses of prosecutions for offenses against the laws of the United States and the employment and subsistence of offenders against such laws. Section 1895 authorizes the imprisonment in a United States penitentiary of persons convicted of offenses against territorial laws at the cost of the territory, and chap. 235, vol. 1, Sup. Rev. Stat., p. 291, authorizes the legislative assemblies of the territories to provide for the care and custody of persons convicted of crime under the laws of the territory as they shall deem proper; and in so doing to contract for their care in some other State or territory, but the expense thereof to be borne by the territory. No doubt congress can pass a law expressly making a certain act a crime against the territory and, as such, punishable in the courts of the territory as a crime against the laws thereof and thus clearly constitute it a crime against the laws of the territory. It has practically done so in the case of certain felonies committed by one Indian against the person or property of another Indian. Such offenses are expressly made subject to the laws of the territory, and are to be tried therefor in the same courts and in the same manner and subject to the same penalties as are all other persons charged with the commission of such crimes. 23 Stat., ch. 341, 362, sec. 9, 385; Kagama v. U. S., 118 U. S., 375. That statute has undoubtedly defined a crime against the territory which the courts of the territory must punish.

In Kagama v. U. S., Justice Miller, in the opinion, says: "In this class of cases the Indian charged with the crime shall be judged by the laws of the territory on that subject and

tried by its courts." In that case, it is true, it was held that when such crimes were committed by an Indian against another Indian, within the limits of an Indian reservation within the boundaries of a State, the U. S. courts had jurisdiction to punish them, although there was no express limitation upon the jurisdiction of the State courts, but that view was expressed as we understand it because of the peculiar relations sustained by the Federal government towards the Indians. That case however presented solely the power of the United States to enact the statute authorizing the courts of the United States to take jurisdiction of such offenses when committed upon a reservation within a State. . Whether or not the State courts had concurrent jurisdiction was not decided unless inferentially. Congress, indeed, by the act referred to, did not define the felonies for the commission of which in a territory an Indian was punishable, but placed such offenses when perpetrated by one Indian against the person or property of another Indian under the laws and jurisdiction of the territory and its courts.

The authority of the United States over crimes is well understood and requires no elucidation here. It may not be improper however in this connection to briefly refer to certain classes of such crimes, that our position may not be mistaken. There are some acts which congress may by law designate as a crime against the general government which affect every citizen, whether in a State or territory, such as offenses against the postal service, the administration of justice in the Federal courts; against the operations of the government, such as counterfeiting, false personation in procuring naturalization, presenting false claims against the government, etc. These and kindred offenses operate upon all citizens of the United States and that they reside in a State constitutes no exemption therefrom.

Again, congress defines offenses committed in such places over which the United States have exclusive jurisdiction, or upon the high seas, and in this class are found such common law offenses as murder and robbery. This class has been held not operative in the territories; and then, occasionally, an

act is made a crime against the United States when committed within a territory as well as any other place over which the United States have exclusive jurisdiction. Under the latter head or included in that class is the crime of bigamy or polygamy and some kindred offenses. In every class, however, the crime is against the United States and a violation of its laws; a convict thereunder is imprisoned, if at all, at the expense of the general government; the executive clemency if exercised must emanate from the president. If indictment is found for such crimes in a territory the proper United States officials would prosecute. The courts of the territory would, in enforcing such law, exercise the jurisdiction of United States courts by legislative requirement. In other words such crimes, to be more particular, the crime of bigamy as defined and punishable by act of congress, is a crime against the sovereignty of the United States. The act of congress embraces no express limitation upon the right of the territory to also punish the same act as an offense against it and its local laws; nor upon the local legislature to enact a law defining and providing a punishment therefor as an offense against the territorial sovereignty. As there are in practical and legal effect two governments, although the one emanates from the other, we are unable to perceive why the legislature of the territory under the general grant of power with which it was invested, may not have enacted a valid law assuming to punish as a territorial offense the crime of bigamy. It does not conflict with the United States statute. It could not and did not assume to destroy the force or effect of the congressional provision. It could not have assumed to offer immunity to those desiring to contract polygamous marriages. By silence, it could only have refused to punish it as a territorial crime. To avoid this possibility congress undertook to punish it as a crime against the Federal government. As the same courts in the territory ultimately tried offenders against both the general government and the territory they could and undoubtedly would have so tempered their proceedings with that principle of justice in view which has been adverted to, that no person would have unduly suffered more than once for

the two offenses flowing from one and the same act. That a possibility remote or near might exist of such double punishment is in our judgment no reason for holding the law of the territory invalid.

In the case of Davis v. Beason, 133 U. S., 333, appears a statement in the opinion of Justice Field which has frequently been quoted; the same being to the effect that the cases in which the legislation of congress will supersede the legislation of a State or territory without specific provisions to that effect, are those in which the same matter is the subject of legislation by both. We do not understand that Justice Field intended to express a doctrine which would abrogate a law of the territory such as is assailed in this proceeding. His opinion in that case taken altogether sustains the views enunciated by us. That case brought before the court an act of the legislature of the territory of Idaho providing that no person who is a bigamist or polygamist should be permitted to vote at any election in the territory, and applying the prohibition also to all who teach, advise, counsel or encourage others to become bigamists or polygamists, or who are members of any organization which teach, counsel or encourage the same. Appellant Davis with others was indicted for a conspiracy to pervert and obstruct the due administration of the laws of the territory by procuring themselves to be admitted to registration as electors by taking the oath required, falsely. Congress had also passed an act prohibiting bigamists and polygamists from voting in any territory. Justice Field, in the opinion, referring to the crime of bigamy, said: "Bigamy and polygamy are crimes by the laws of all civilized and Christian countries. They are crimes by the laws of the United States, and they are crimes by the laws of Idaho." Again, after quoting the Idaho statute above referred to, he held that the same was not open to any constitutional or legal objection; although the same point that congress having legislated thereon the territory could not, was made before that court. After quoting the United States statute prohibiting bigamists from voting in any territory, he used the following language: "This is a general law applicable to all

territories and other places under the exclusive jurisdiction of the United States. It does not purport to restrict the legislation of the territories over kindred offenses or over the means for their ascertainment and prevention."

The Supreme Court of the territory of Montana had occasion to determine a very similar question. One Guyott was convicted of selling whisky to an Indian contrary to the statute of the territory constituting such act a crime. It was argued there that the act was invalid, and that congress had provided a punishment for the offense and that the power of congress was exclusive over the subject. The latter point was the one which seems to have been more particularly urged. However, the court upheld the conviction, after showing that the facts upon which he was convicted brought the case within the purview of the statutes both of the United States and the territory. It was conceded in the opinion in that case that congress had authority to enact laws punishing the same crime, but the court say: "These doctrines are not questioned by this court, and do not decide that a State or territory has no right to pass laws making definite acts of its citizens in selling intoxicating liquors to Indians crimes, and prescribing penalties for their infraction." And again, after quoting from the opinion of the Supreme Court of the United States in Hornbuckle v. Toombs, 18 Wall., 655, with reference to the power of legislation existing in the territories, wherein it is said: "The powers of legislation thus exercised by the territorial legislatures are nearly as extensive as those exercised by any State legislature," say

"The act under consideration is clearly within the police power of the territorial government, as defined by the courts, and is not inconsistent with the constitution and laws of the United States." Territory v. Guyott, 9 Mont., 46. It will be observed that the Montana case is squarely in point.

We are clearly of the opinion that the act defining and punishing bigamy passed by the legislature of the Territory of Wyoming was within the power of that body, and that the same was not inconsistent with the constitution or laws of the United States. That it was a valid enactment and not

having been repealed, is by virtue of the provisions of the enabling act and State constitution in force as a law of the State.

Answering the questions upon which this case was reserved, and which are quoted at length herein, we say:

To question 1. Yes, the act of bigamy as defined in section 74 of chapter 73 of the session laws of Wyoming of 1890, committed March 28, 1891, within the State of Wyoming, is an offense punishable under the laws of said State.

To question 2. Yes. The legislature of the territory of Wyoming had power to enact said section at the time of the passage of said act of March 14, 1890.

To question 3. It is unnecessary to answer this, as we hold the law was in force as a law of the territory.

To question 4. Yes. Said section 74 of chap. 73 of the laws of Wyoming of 1890 is now in force as a part of the laws of the State of Wyoming.

GROESBECK, C. J., and CONAWAY, J., concur.