## TERRITORY OF HAWAII *v.* BLANCHE MARTIN.

### EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED SEPTEMBER 30, 1908.                    DECIDED OCTOBER 15, 1908.

### HARTWELL, C.J., WILDER AND BALLOU, JJ.

TERRITORIES—*continuance of former law by Organic Act.*

> R. L. Sec. 3151, defining and punishing fornication, was continued in force as one of the laws of Hawaii by the Organic Act, notwithstanding the Edmunds-Tucker Act of 1887 covering the same subject.

OPINION OF THE COURT BY HARTWELL, C.J.

The defendant was convicted upon an indictment charging her with fornication, an offense defined in Sec. 3151 R. L. (P. C. 1869, ch. 15, S. 6; P. L. S. 91), punishable by fine not exceeding $50 nor less than $15 or by imprisonment at hard labor not more than three months nor less than one month in the discretion of the court. The offense was originally defined in Sec. 7, Ch. 13 of the Penal Code of 1850, and punishable by a fine of $15, and in default of payment of the fine by imprisonment at hard labor for the term of four months. The defendant demurred to the indictment on the grounds (1) that by Sec. 711 R. S. "The jurisdiction vested in the courts of the United States in the cases hereinafter mentioned shall be exclusive of the courts of the several states," the cases mentioned including "all crimes and offenses cognizable under the laws of the United States;" (2) that Sec. 3151 R. L. is inconsistent with the constitution and laws of the United States and was not continued in force by Sec. 6 of the Organic Act, and (3) that no law of Hawaii makes the act charged a criminal offense. Motions for a new trial and in arrest of judgment were filed on grounds two and three above named and also on the ground that the act of March 3, 1887, amending Sec. 5352 R. S. and defining and providing a punishment for the crime of fornication, being a law of the United States not locally inapplicable, is extended to this Territory by Sec. 5 of the Organic Act and operates to repeal or suspend Sec. 3151 R. L. Exceptions to the overruling of the demurrer and denial of the motions present the question whether the statute under which the defendant was indicted is law in this Territory.

The act of July 1, 1862, 12 St. L. 501, is entitled "An Act to punish and prevent the practice of Polygamy in the Territories of the United States and other Places and disapproving and annulling certain Acts of the Legislative Assembly of the

Territory of Utah." Sec. 1, relating to, defining and punishing bigamy "in a Territory of the United States or other place over which the United States have exclusive jurisdiction," appears in substance in Sec. 5352 R. S., "Statutes of the United States general and permanent in their nature in force on the first day of December, one thousand eight hundred seventy-three." (Sec. 5595 R. S.) The act of March 22, 1882, 22 St. L. Ch. 47, amends Sec. 5352 R. S. by defining and punishing polygamy and unlawful cohabitation. The Edmunds-Tucker Act of March 3, 1887, 24 St. L. 635, defines and punishes adultery, incest and fornication, the latter by imprisonment not exceeding six months or fine not exceeding $100. This act contains numerous provisions relating specifically to the Territory of Utah. Secs. 1 and 2 relating to testimony in prosecutions for bigamy, polygamy or unlawful cohabitation, and Secs. 3-5 which define and punish the offenses of adultery, incest and fornication "do not mention the place of commission of any offence; and may perhaps be held to include 'any Territory or other place over which the United States have exclusive jurisdiction,' since so much of the act of March 22, 1882, c. 47, referred to in the title of this act, as defined and punished offences, expressly included any such Territory or place. * * * We are not now required to determine the application of those provisions of the act of 1887." *France v. Connor,* 161 U. S. 67 (1896). Sec. 18, providing the common law right of dower, was held in *France v. Connor* to be inapplicable to the Territory of Wyoming where the legislature in 1869 had enacted a statute abolishing dower and enacting a law of community of property similar to that of the civil law. There is nothing in the act of 1887 which limits its application to Utah or to any other territory in which polygamy or any other of the offenses therein enumerated had become a "practice," whereas, Sec. 1891 R. S. requires that "the constitution and all laws of the United States which are not

locally inapplicable shall have the same force and effect within all the organized territories and within every territory hereafter organized as elsewhere within the United States," and by Sec. 5 of the Organic Act, "all laws of the United States which are not locally inapplicable shall have the same force and effect within the said Territory as elsewhere in the United States." Hence it is argued the act of congress concerning the offense under consideration is the law of this Territory and precludes territorial legislation on the subject, while Sec. 6 of the Organic Act does not continue this former law of Hawaii as it is inconsistent with the United States law on the subject and also with the provision in Sec. 5 extending to this Territory, United States laws not locally inapplicable.

The defendant contends that the legislative power of this Territory extending to "all rightful subjects of legislation not inconsistent with the constitution and laws of the United States" does not authorize a law covering the same subject as is covered by an act of congress and providing a different punishment, citing, besides other cases, *Gibbons v. Ogden,* 9 Wheat. 1, which held that the exercise by congress of its power to regulate commerce precludes state legislation upon the subject. *Tua v. Carriere,* 117 U. S. 201, is also cited to show that congress having enacted a general bankrupt act under its power to establish uniform laws on the subject of bankruptcies throughout the United States a state insolvent law inconsistent therewith is suspended while the bankrupt act remains in force. "If it be true," says the defendant, "that legislation by congress on subjects of interstate commerce and bankruptcy excludes the right of the state to legislate on the same subject and that legislation by congress on the subject of bankruptcy operates as a supersession of then existing state laws on that subject, is it not equally true that legislation by congress for the territories under a constitutional grant of power includes the right of a territory to legislate on the same subject, and

that then existing territorial legislation is at least superseded." *Davis v. Beason*, 133 U. S. 333, holds that a statute of the Territory of Idaho disfranchising and disqualifying from holding office any "polygamist, bigamist or any person cohabiting with more than one woman," as well as any person teaching, advising or counselling bigamy or polygamy, was within the legislative power of the Territory, and that the act of March 22, 1882, had not "covered the whole subject of punitive legislation against bigamy and polygamy leaving nothing for territorial action on the subject," was a "general law applicable to all territories" and "does not purport to restrict the legislation of the territories over kindred offences or over means for their ascertainment or prevention." The defendant relies upon the following language of the court in that case: "The cases in which the legislation of congress will supersede the legislation of a State or Territory, without specific provisions to that effect, are those in which the same matter is the subject of legislation by both. There the action of congress may well be considered as covering the entire ground. But here there is nothing of this kind."

Upon the exercise by congress of its constitutional power to make bankruptcy laws uniform throughout the United States, state bankruptcy laws are necessarily superseded or there would be no uniformity, and its power to regulate commerce ex vi termini excludes regulation by the states, but its power to provide for the punishment of counterfeiters does not preclude state laws having concurrent jurisdiction over such offenses. 8 Fed. Stat. Ann. 608. Hence, as well as by virtue of the constitutional power of congress to "make all needful rules and regulations respecting the territory or other property belonging to the United States," (Art. 4, Sec. 3), decisions concerning the exclusive jurisdiction of the United States in bankruptcy and interstate or foreign commerce laws do not imply that the federal laws, penal or civil, relating to terri-

tories exclude territorial laws upon the same subject.    The facts in *Davis v. Beason* were such as to leave it a matter of surmise whether the United States supreme court would hold that the federal act of 1887 precludes territorial legislation upon the same offenses and covering the same ground but with different penalties; but if the former law of Hawaii is authorized by the Organic Act it is unnecessary to adjudicate upon the concurrent jurisdiction of the federal court.

A large portion of the argument has been devoted to the question of the applicability of the Edmunds-Tucker Act, the defendant and the county attorney claiming that it applies, the former insisting that the jurisdiction under it is exclusive and the latter that it is concurrent with that of the Territory, while the attorney general contended that the act is inapplicable since Hawaii had laws amply providing against these offenses and did not have the polygamous practices against which the Edmunds Act and its amendments made, as he claims, for its greater effectiveness, were aimed; and it is suggested that congress, in failing to give territorial district magistrates and circuit courts jurisdiction over the act or to provide for its more effective enforcement by the federal court upon other islands than that of Oahu, showed that it did not contemplate its application.    There is, perhaps, force in this contention.    These offenses were ordinarily tried by district magistrates and often went no further.    It may be said that because the federal court is not sufficiently equipped for the administration of the Edmunds-Tucker Act throughout the group or because conditions do not appear to require any other than the former laws of Hawaii on the subject is no reason to infer that congress did not intend to apply the act and that whether it was appropriate or requisite was for congress alone to determine.    The applicability to the Territory of Oklahoma of the act of February 15, 1888, Ch. 10, 25 St. L. 33, punishing horse stealing, is denied in *U. S. v. Pridgeon,* 153 U. S.

48, 53, on the ground apparently that the later act operated as a repeal of the earlier. Possibly there were special features in that case which may distinguish it from the case at bar. But it was unquestionably within the power of congress to continue the laws of Hawaii in force whether the federal act was extended here or not. We are of the opinion that under the Organic Act those laws were continued and therefore we do not pass upon the applicability of the Edmunds-Tucker Act. That act has been enforced here since the Organic Act took effect although we believe mainly in cases of bigamy and adultery arising on the Island of Oahu and it would not only be useless but inappropriate to pass upon the jurisdiction of the federal court under it.

The case does not present the question which has been argued at considerable length of the power of the territorial legislature to enact laws, defining in the same terms the offenses named in the federal act and attaching different penalties. The decisions upon the effect of such subsequent legislation appear in the following cases: In *State v. Norman,* 16 Utah, 457, in which the defendant had been convicted of adultery under the statute of the Territory of Utah making the offense punishable by imprisonment not exceeding three years, the court regarded the language above quoted from *Davis v. Beason* as not "intended to establish a doctrine that would abrogate a territorial statute like the one now in question" and considered the *Beason* case as having been decided upon the ground stated in its opinion that the act of 1887 "does not purport to restrict the legislation of the Territory over kindred offenses or over the means for their ascertainment and prevention." It was also held *In Re Murphy,* 5 Wyo. 297, and *Territory v. Guyott,* 9 Mont. 46, that a territorial law relating to the offense of bigamy was valid and could co-exist with prior legislation under the Edmunds Act of 1862 and its amendments. On the other hand, in *Territory v. Alexander* (Ariz.), 89 Pac. 514, it is held that

the federal statute supersedes the territorial statute relating to bigamy, the court regarding the Wyoming, Montana and Utah decisions as failing to recognize the "distinction between a territory and a state in their relation to the United States," saying that "an offense against a federal law and an offense created by the territorial statute are both in effect offenses against the sovereignty of the United States," and saying, with reference to *Davis v. Beason,* that from a reading of the entire case "the implication is that had the congressional act covered the entire subject matter of the Idaho statute the latter would have been superseded by the former." It is held that in respect of bigamy the federal act applies to the District of Columbia. "The crime belongs to the criminal code of the United States and there is every reason for supposing that congress intended uniformity in the definition of the crime and in the conditions that would excuse every prosecution, otherwise unavoidable conflicts would arise with danger, in many cases, of defeating the object and policy of the United States statute." *Knight v. U. S.,* 6 App. Cas. Dist. of Columbia, 5; and so of the offense of adultery, *Chase v. U. S.,* 7 Ib. 149, and *Falk v. U. S.,* 15 Ib. 446. The alternative, however, of the federal statute was an old statute of Maryland of the year 1715 in force in the district for the punishment of the offense by a fine of 1200 pounds of tobacco or £3 current money, or, on failure to pay the fine, by whipping, a statute which was held not to be "adapted to the present state of society."

Confining ourselves to the question whether the former law is continued by act of congress, the Organic Act, Sec. 81, provides that "until the legislature shall otherwise provide the laws of Hawaii heretofore in force concerning the several courts and their jurisdiction and procedure shall continue in force except as herein otherwise provided." This provision would retain the jurisdiction of magistrates and circuit courts over the offenses under former laws of Hawaii unless their

continuance was unauthorized by Sec. 6 which continues in force not only the laws of Hawaii not inconsistent with the constitution or laws of the United States but those which were not inconsistent with the provisions of the act.    In order that laws should ,not continue in force their continuance should either expressly or by clear implication be negatived or disaffirmed in other provisions of the act, the continuance not being confined to such laws as were not inconsistent with the constitution or laws of the United States.    The laws under consideration are not inconsistent but in conformity with the provision in Sec. 81 by which the jurisdiction of the territorial courts remains except as otherwise provided in the act.    There is significance in the express repeal in Sec. 7 of a large number of the penal laws of Hawaii which are referred to by name as well as chapter and section, as, for instance, blasphemy, vagrancy, fire arms.    The attention of congress could not fail to have been directed to a subject so important as the laws relating to the establishment and preservation of the domestic relations, the foundation of civic as well as private virtue, as well as the basis of laws regulating inheritance and alienation of property and rights and obligations of married persons and their children.    If congress had intended that laws directed to the enforcement of rules of decency and morality should be repealed they undoubtedly would have been included in the list of penal laws repealed.    As the laws of Hawaii relating to the offenses named in the Edmunds-Tucker Act are not repealed expressly or by necessary implication and as their enforcement by territorial courts is not inconsistent with other provisions in the Organic Act but is consistent with them they remain in force under Sec. 6 even if inconsistent with the Edmunds-Tucker Act.    If the section had declared that laws should continue in force which were consistent with the constitution or laws of the United States or with other provisions in the act it would perhaps more clearly appear that while laws inconsistent with

the constitution could not remain, those laws which were consistent with the Organic Act, conforming to all its provisions, would remain.   This view conforms to the construction placed upon the act in *Carter v. Gear,* 16 Haw. 245, in which case the court said that the act "contains many different provisions bearing upon the same subject," that it "was enacted with reference to a highly developed system of government already existing," and "manifests upon its face from beginning to end an intention to continue that system except as changed in certain respects by that act."   The case was affirmed in 197 U. S. 348, the court, after referring to Sec. 6, saying, "By section 7 the constitution of the Republic of Hawaii and a large number of its laws, specially enumerated, are repealed, but the statutes giving probate and equity jurisdiction to the circuit courts are not mentioned."

The statute under which the defendant is held not appearing to be inconsistent with any of the provisions of the Organic Act or with the United States constitution the defendant's exceptions are overruled.

*W. L. Whitney, Deputy Attorney General (C. R. Hemenway, Attorney General,* with him on the brief), also *F. W. Milverton, Deputy Attorney County of Oahu,* for the Territory.

*A. S. Humphreys* for defendant.

---

## CONCURRING OPINION BY BALLOU, J.

Assuming that the Edmunds Act and the Edmunds-Tucker Act are in force within this Territory as contended by the defendant and held by the United States District Court for the Territory of Hawaii, it does not necessarily follow that the local statutes upon that subject are repealed or superseded. We held in *Territory v. McCandless,* 18 Haw. 616, that this question, there applied as between a territorial statute and a

county ordinance, was one of statutory construction and quite distinct from the constitutional question as to whether, assuming both laws to be in force, ·a man could be punished under both for the same offense. In that case the court failed to find authority for duplicating the territorial legislation but conceded that such authority might be authorized expressly. or by necessary implication. There is no constitutional difficulty in two penal statutes upon the same subject even within a territory or other possession under the immediate jurisdiction of congress, as is shown by the case of an offense punishable under·the articles of war (R. S. Sec. 1342) and by the local civil law of the Philippine Islands. *Grafton v. U. S.,* 206 U. S. 333.

The proposition that where congress has legislated under its constitutional powers all state or local laws upon the same subject are superseded is not of universal application and is extremely uncertain in its application to penal statutes. Of the powers given to congress and not forbidden to the states, some are exclusive while some are concurrent. Exclusive jurisdiction in matters of naturalization and bankruptcy necessarily follows from the requirement that these shall be uniform throughout the United States (*Sturges v. Crowninshield,* 4 Wheat. 122) and the power to regulate commerce among the several states is also exclusive from·the necessary incompatability between two regulations of the same subject. *Gibbons v. Ogden,* 9 Wheat. 1. On the other hand, the power to lay and collect taxes is obviously not exclusive of state legislation upon the, same subject.

With regard to the exclusiveness of legislation on penal subjects the defendant relies upon the following passage: "The cases in which the legislation of congress will supersede the legislation of a state or territory without specific provisions to that effect are those in which the same matter is the subject of legislation by both. There the action of congress may well

be considered as covering the entire ground." *Davis v. Beason,* 133 U. S. 333, 348.

As applied to penal legislation by states, this dictum seems opposed to a line of authorities of which may be cited *Fox v. State,* 5 How. 410; *Moore v. Illinois,* 14 How. 13; *Sexton v. California,* 189 U. S. 319. In *U. S. v. Arjona,* 120 U. S. 479, the court, speaking of the authority of the United States to punish offenses against the law of nations, says, "This, however, does not prevent a state from providing for the punishment of the same thing; for here, as in the case of counterfeiting the coin of the United States, the act may be an offense against the authority of a state as well as that of the United States."

So far as the penal legislation of territories is concerned, the typical case is the existence of federal penal legislation affecting a territory followed by an attempt on the part of the territorial legislature to punish the same offenses. It was on this state of facts that the conflicting cases of *State v. Norman,* 16 Utah 457; *In re Murphy,* 5 Wyo. 297; *Territory v. Guyott,* 9 Mont. 46, and *Territory v. Alexander* (Ariz.), 89 Pac. 514, were decided. The case at bar, however, does not involve the question of power of a legislature to enact penal laws inconsistent with federal legislation but merely the question as to which of two previously existing statutes was intended by congress to apply to a new territory. In this respect the case more nearly resembles *Kie v. United States,* 27 Fed. 351 and *United States v. Clark,* 46 Fed. 633 in which penal laws of the United States were held to take precedence over the laws of Oregon applied by the act of May 17, 1884 (23 St. at L. 24), to the Territory of Alaska. If these cases are applicable, murder and manslaughter must be withdrawn from the jurisdiction of the territorial courts in Hawaii, where the usual double jurisdiction is divided between the federal and territorial courts. These cases, however, seem irreconcilable with the later and control-

ling case of *United States v. Pridgeon,* 153 U. S. 48.  In that case, previous to the organization of the Territory of Oklahoma, horse stealing in the Indian country might have been punished under the general provisions of R. S. Sec. 5356 relating to larceny in any place under the exclusive jurisdiction of the United States or under a special act concerning horse stealing in the Indian Territory (Act February 15, 1888, Ch. 10; 25 St. at L. 33).  Upon the organization of the Territory of Oklahoma congress extended to the new territory for a certain period certain laws of the State of Nebraska, including the entire criminal code, "in so far as they are locally applicable and not in conflict with the laws of the United States or with this act."  This language is substantially similar to that in which congress extended the criminal code of the Republic of Hawaii over the new territory (Organic Act, Sec. 6).  In the Oklahoma case the supreme court held, answering a certified question, that horse stealing in the Indian country during the period mentioned was not a crime against the United States, the previous federal legislation having been superseded by the corresponding provision of the Nebraska code.

While the application of this case might lead us further than the court has found it necessary to go in this case, it certainly supports the proposition that local territorial penal legislation may be in force within a territory notwithstanding the existence of general federal legislation which would otherwise be applicable.  An examination of our Organic Act leads to the same conclusion.

Upon the annexation of the Republic of Hawaii to the United States all local legislation would, under the principles of international law, remain in force until action by the legislative power of the latter.  Turning now to Secs. 6 and 7 of the Organic Act, we find that there is no express repeal of the laws of Hawaii upon the general ground of their inconsistency with the laws of the United States.  If Sec. 6 stood alone the

Territory v. Martin, 19 Haw. 201.

implication that inconsistent laws were repealed would prob-
ably follow from the continuing in force of the laws not in-
consistent, but it would still be a repeal by implication, the
necessity for which is excluded by Sec. 7, which specifically
repeals over seven hundred sections and parts of sections of
the laws of Hawaii by reference to both subject and number.
The inference is almost irresistible that Sec. 7 contains all
the Hawaiian laws which congress intended to designate as
inconsistent with the laws of the United States, and that in
view of the retention of the local Hawaiian tribunals to deal
with local law and the establishment of a separate United
States district court to deal with federal questions, congress
did not consider as inconsistent the retention on the statute
books of local laws upon subjects covered by federal statutes,
even though the local law was to be administered by different
tribunals and might result in different penalties.  This view
is somewhat strengthened by the inadequacy of the machinery
bestowed upon the federal court upon the supposition that it
was to do the police work of the entire Territory in regard to
offenses against morality, to say nothing of murder, manslaugh-
ter and every other crime punishable under a United States
statute.  The question being one of statutory construction it
appears clear that the local statute under which the defendant
was convicted is in force.