# WASHINGTON v. MILLER.

## ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 53.   Submitted November 5, 1914.—Decided December 14, 1914.

Under the original Creek Agreement of March 1, 1901, controlling effect was given to the Creek tribal laws of descent and distribution rather than to the laws of Arkansas upon that subject put in force in the Indian Territory, and the provisions giving such effect to the tribal laws embraced allotments to living citizens as well as allotments on behalf of deceased citizens.

Under § 6 of the Supplemental Creek Agreement of June 30, 1902, the provisions of the agreement of March 1, 1901, giving effect to the Creek tribal laws of descent and distribution were repealed and the provisions of chap. 49 of Mansfield's Digest of the laws of Arkansas were substituted therefor with the proviso that only citizens of the Creek Nation should inherit lands of the Creek Nation except in instances where there were no such citizens to take the descent.

Section 6 looked to the future no less than to the present and is intended to prescribe rules of descent applicable to allotments and there is nothing in that section indicating that it was intended to be less comprehensive; the words "lands of the Creek Nation" as used therein mean lands in the Creek Nation and include such lands after as well as before allotment.

The provision in the act of April 28, 1904, making all the laws of Arkansas put in force in Indian Territory applicable to all persons and estates in that Territory, being general, did not operate to repeal the special provisos in § 6 of the act of June 30, 1902, confining the descent and distribution of Creek lands to citizens of the Creek Nation where there were Creek citizen heirs to take the inheritance.

Repeals by implication are not favored and usually occur only in cases of such irreconcilable conflict between an earlier and later statute that effect cannot reasonably be given to both.

Where there are two statutes upon the same subject, the earlier being special and the later general, the presumption is, in the absence of an express repeal, or an absolute incompatibility, that the special is to remain in force as an exception to the general.

There is no incompatibility between a general statute purporting to

regulate descent and distribution of all lands within a Territory and a special statute directly regulating descent and distribution of a particular class of Indian lands therein.

Under § 6 of the agreement of June 30, 1902, regulating descent and distribution of Creek Indian allotments, the non-citizen father does not inherit where there are citizens heirs who can take the inheritance.

Questions concerning the effect of allegations and admissions which conflict with denials in the same pleading are matters of local pleading and practice, and the ruling of a state court thereon is not open to review in this court.

34 Oklahoma, 259, affirmed.

THE facts, which involve the construction and application of the laws of descent and distribution relating to Creek Indian allotments, are stated in the opinion.

*Mr. Lewis C. Lawson* for plaintiff in error.

*Mr. Nathan A. Gibson* for defendant in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This was a suit to quiet the title to lands within what until recently was the Creek Nation in the Indian Territory. The lands were allotted to an enrolled Creek, who died intestate November 3, 1907, after receiving the usual tribal deeds approved by the Secretary of the Interior. He left no widow or descendant, but was survived by his father and mother, two half brothers and a half sister on the paternal side and a half sister on the maternal side. The father was an enrolled Seminole and the mother an enrolled Creek. The half brothers and half sister on the paternal side were Seminoles and the half sister on the maternal side was a Creek. The plaintiff in the suit was in possession and claimed under a deed from the mother, executed July 16, 1909, and approved by the County

Court. See *United States* v. *Knight*, 206 Fed. Rep. 145.
The father was a defendant and by his answer admitted
the facts here stated and insisted that, although not a
Creek citizen, he was an heir of the deceased allottee and
as such had an interest in the lands. Upon this answer
a judgment was given against him, which was affirmed by
the Supreme Court of the State. 34 Oklahoma, 259. He
then sued out this writ of error.

The ultimate question for decision is whether the father
was an heir, and that involves an ascertainment and in-
terpretation of the applicable law of descent.

The allotment was made and the tribal deeds were is-
sued under the act of March 1, 1901, c. 676, 31 Stat. 861,
known as the Original Creek Agreement, and the modify-
ing act of June 30, 1902, c. 1323, 32 Stat. 500, known as
the Supplemental Creek Agreement.

Before coming to the provisions of those acts, it may be
helpful to refer to the situation existing at the time of their
enactment. Long prior thereto the Creek Nation had
adopted laws of its own regulating the descent and dis-
tribution of property of its citizens dying intestate. Creek
Laws of 1867, § 6; Perryman's Compiled Creek Laws of
1890, § 6, p. 32, § 8, p. 76; Bledsoe's Indian Land Laws,
2d ed., §§ 829–831. Congress also had dealt with that sub-
ject. By the act of May 2, 1890, c. 182, 26 Stat. 81, §§ 30
and 31, it had "extended over and put in force in the In-
dian Territory" several general laws of the State of Ar-
kansas, among which was Chapter 49 of Mansfield's Digest
of 1884 relating to descent and distribution. At first the
operation of this act was materially restricted by a proviso
declaring that "the judicial tribunals of the Indian na-
tions shall retain exclusive jurisdiction in all civil and
criminal cases arising in the country in which members of
the nation by nativity or by adoption shall be the only
parties; and as to all such cases the laws of the State of
Arkansas extended over and put in force in said Indian

Territory by this act shall not apply." But the proviso lost much of its force when the act of June·7, 1897, c. 3, 30 Stat. 62, 83, declared that "the laws of the United States and the State of Arkansas in force in the [Indian] Territory shall apply to all persons therein, irrespective of race," and was practically abrogated when the act of June 28, 1898, c. 517, 30 Stat. 495, abolished all tribal courts in the Indian Territory (§ 28) and provided (§ 26) that "the laws of the various tribes or nations of Indians shall not be enforced at law or in equity by the courts of the United States in the Indian Territory." Of course, these congressional enactments operated to displace the Creek tribal laws of descent and distribution and to substitute in their stead the Arkansas law as expressed in Chapter 49 of Mansfield's Digest.

Notwithstanding the situation just mentioned, provisions were inserted in the Original Creek Agreement of March 1, 1901, *supra*, which undoubtedly gave controlling effect to the Creek tribal laws rather than to the Arkansas law; and those provisions embraced allotments to living citizens as well as allotments on behalf of deceased citizens. Thus in § 7 it was provided that, if, after a homestead had served the purposes of its creation, the allottee should die intestate, the land should "descend to his heirs according to the laws of descent and distribution of the Creek Nation;" and in § 28 it was provided that, if a citizen or child entitled to enrollment should die before receiving his allotment and share of the funds of the tribe, the lands and money to which he would be entitled, if living, should "descend to his heirs according to the laws of descent and distribution of the Creek Nation." In other parts of the agreement the word "heirs" was used without any accompanying explanation of who was intended, but this evidently was because the word was intended to have the same signification as in §§ 7 and 28, and therefore no further explanation was necessary.

But the purpose to give effect to the Creek tribal laws
was soon changed, for the act of May 27, 1902, c. 888, 32
Stat. 245, 258, not only expressly repealed so much of the
act or agreement of March 1, 1901, as provided for descent
and distribution according to the Creek tribal laws, but
also declared: "and the descent and distribution of lands
and moneys provided for in said Act shall be in accordance
with the provisions of chapter forty-nine of Mansfield's
Digest of the Statutes of Arkansas in force in Indian Terri-
tory." A little more than a month later what was said
in the act of May 27, 1902, was repeated in § 6 of the Sup-
plemental Creek Agreement of June 30, 1902, and was
there qualified by two provisos which have an important
bearing here. That section reads:

"The provisions of the act of Congress approved
March 1, 1901 (31 Stat. 861), in so far as they provide for
descent and distribution according to the laws of the Creek
Nation, are hereby repealed and the descent and distribu-
tion of land and money provided for by said act shall be
in accordance with chapter 49 of Mansfield's Digest of
the Statutes of Arkansas now in force in Indian Territory:
*Provided*, That only citizens of the Creek Nation, male and
female, and their Creek descendants shall inherit lands
of the Creek Nation: *And provided further*, That if there
be no person of Creek citizenship to take the descent and
distribution of said estate, then the inheritance shall go
to noncitizen heirs in the order named in said chapter 49."

Applying this section to the facts of this case the Su-
preme Court of the State held that the father, although an
heir according to Chapter 49 of Mansfield's Digest, was
excluded by the two provisos from the right to inherit,
because he was not a Creek citizen and the mother, who
was such citizen, had an inheritable status according to
that chapter.

The first contention requiring consideration is that the
two provisos do not affect the right to inherit from one

who dies after receiving his allotment, but only the right to receive lands from the tribe in place of one who was entitled to an allotment and died before receiving it. The contention rests upon the words "lands of the Creek Nation" in the first proviso and is sought to be sustained upon the theory that lands which have been allotted and passed into private ownership are no longer lands of the tribe, and therefore not within the provisos. We think the words indicated were merely descriptive of the body of lands which were being allotted in severalty and subjected to the incidents of individual ownership, that is, the lands in the Creek Nation. In that sense they would include the lands as well after allotment as before. The section as a whole shows that it looked to the future no less than to the present, and was intended to prescribe rules of descent applicable to all Creek allotments. Nothing in the provisos indicates that they were to be less comprehensive. Their purpose was to give Creek citizens and their Creek descendants a preferred right to inherit, and no reason is perceived for giving such a preference where a citizen entitled to an allotment died before receiving it that would not be equally applicable if he had died after it was received. We conclude therefore that the contention is not well founded.

It next is insisted that the two provisos were repealed by a provision in the act of April 28, 1904, c. 1824, 33 Stat. 573, reading as follows:

"All the laws of Arkansas heretofore put in force in the Indian Territory are hereby continued and extended in their operation, so as to embrace all persons and estates in said Territory, whether Indian, freedmen, or otherwise, . . ."

No repealing clause accompanied this provision, so the question is, did it repeal the provisos by implication. There is no doubt that, if taken literally, it would subject the Creek lands to the Arkansas law of descent and dis-

tribution without any qualification or restriction. But this would be only by reason of the generality of its terms, for it made no mention of that law or of those lands. In short, it was plainly a general statute and did not show that the attention of Congress was then particularly directed to the descent of the lands of the Creeks. On the other hand, § 6 of the supplemental agreement and its two provisos dealt with that subject in specific and positive terms which made it certain that the Creeks and their lands were particularly in mind at the time. In these circumstances we think there was no implied repeal, and for these reasons: First, such repeals are not favored, and usually occur only where there is such an irreconcilable conflict between an earlier and a later statute that effect reasonably cannot be given to both (*United States* v. *Healey*, 160 U. S. 136, 146; *United States* v. *Greathouse*, 166 U. S. 601, 605); second, where there are two statutes upon the same subject, the earlier being special and the later general, the presumption is, in the absence of an express repeal, or an absolute incompatibility, that the special is intended to remain in force as an exception to the general (*Townsend* v. *Little*, 109 U. S. 504, 512; *Ex parte Crow Dog, Id.* 556, 570; *Rodgers* v. *United States*, 185 U. S. 83, 87–89); and, third, there was in this instance no irreconcilable conflict or absolute incompatibility, for both statutes could be given reasonable operation if the presumption just named were recognized.

No doubt there was a purpose to extend the operation of the Arkansas laws in various ways, but we think it was not intended that they should supersede or displace special statutory provisions enacted by Congress with particular regard for the Indians whose affairs were peculiarly within its control. *Taylor* v. *Parker, ante,* p. 42. See also *In re Davis' Estate,* 32 Oklahoma, 209.

In the briefs there is considerable discussion of the question whether the mother, through whom the plaintiff

claimed, took the fee simple or only a life estate, but as the judgment against the father was amply sustained in either event that question need not be considered.

The allegations and admissions in one part of the defendant's answer were held to overcome the denials in another and complaint is made of this, but, as it appears that nothing more than a question of local pleading and practice was involved, the ruling is not open to review in this court.

*Judgment affirmed.*