## ABBATE v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 14, 1921.)

No. 3535.

1. **Intoxicating liquors ⊜132—Alaska statute not repealed by National Prohibition Act.**

Act Feb. 14, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3643b–3643r), known as the "Alaska Bone Dry Law," *held* not repealed by National Prohibition Act Oct. 28, 1919, and the penalties for its violation prescribed in the local act, although heavier than those imposed for the same offense by the national law, *held* valid and enforceable.

2. **Statutes ⊜162—Special act not repealed by general act.**

Where there are two legislative acts, one a special or local act and the other a general act, which standing alone would include the same matter as the local act, so that the provisions of the two acts conflict, the local act must be given the effect of establishing an exception to the general act.

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for Division No. 1 of the District of Alaska; Robert W. Jennings, Judge.

Criminal prosecution by the United States against Arthur Abbate. Judgment of conviction, and defendant brings error. Affirmed.

John R. Winn and John H. Cobb, both of Juneau, Alaska, for plaintiff in error.

James A. Smiser, U. S. Atty., of Juneau, Alaska, for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The plaintiff in error was convicted of violation of the Bone Dry Law of Alaska (39 Stat. 903, c. 53 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3643b–3643r]), in that he willfully and unlawfully had in his possession for sale intoxicating liquor, and he was sentenced to pay a fine of $800 and to be imprisoned three months in jail.

[1] It is contended that the Bone Dry Law of Alaska has been repealed by the National Prohibition Act, the penalty for violation of which for a first offense, as here, is a fine of $500 without imprisonment. The National Prohibition Act provides:

"All provisions of law that are inconsistent with this act are repealed only to the extent of such inconsistency and the regulations herein provided for the manufacture or traffic in intoxicating liquor shall be construed as an addition to existing laws." 41 Stat. 317.

There can be no question that the act takes the place of prior general statutes of the United States so far as they are inconsistent therewith. United States v. Sohm (D. C.) 265 Fed. 910. But it does not follow that it repeals the express provisions of a local statute adopted expressly for Alaska. In legislating for a territory Congress exercises the combined powers of a national and a state government. The Bone Dry

Law of Alaska stands upon the same footing it would have had it been enacted by a territorial Legislature created by Congress. In re Murphy, 5 Wyo. 309, 40 Pac. 398. And it is well settled that a law of a territory will subsist and be enforced concurrently with a general law of Congress applicable throughout the United States on the same subject-matter. Territory v. Guyott, 9 Mont. 46, 22 Pac. 134; State v. Norman, 16 Utah, 463, 52 Pac. 986; Moore v. People, 14 How. 13, 14 L. Ed. 306.

Congress enacted the Bone Dry Law for Alaska, and 20 months later it enacted the National Prohibition Act. In enacting the latter Congress was adopting legislation for the whole United States to carry out the provisions of the Eighteenth Amendment. In enacting the Bone Dry Law, on the other hand, Congress was pursuing its policy of prohibition in Indian country. That policy as to Alaska was first manifested by legislation enacted on July 27, 1868, for the prevention of the importation and sale of intoxicating liquors in Alaska, the population of which was largely composed of Indians, and it was continued without interruption until the enactment of the Bone Dry Law of February 14, 1917. That act contains provisions peculiarly applicable to Alaska, and which are more drastic and far-reaching, and involve severer penalties for the same offense, than do the provisions of the National Prohibition Act.

What is there to show that the National Prohibition Act was intended to replace the Bone Dry Law of the territory of Alaska? It is not to be found in the statute, which provides that the Constitution of the United States and all the laws thereof "which are not locally inapplicable" shall have the same force and effect within the said territory as elsewhere in the United States. That is a general provision which is found in the organic act of all the territories. It is simply an extension of the laws of the United States to the territory. It does not stand in the way of or affect the construction of special congressional legislation solely for the territory.

[2] The provision of the National Prohibition Act for the punishment of selling liquor in Alaska is "locally inapplicable" in Alaska, for the reason that Congress has provided for a severer penalty for the act when committed there.

"A general act repealing all acts that are inconsistent with its provisions will usually be construed to refer to general statutes alone and not to include special or local laws." 25 R. C. L. 913.

"The presumption against implied repeals has peculiar and special force when the conflicting provisions which are thought to work a repeal are contained in a local or special act and a later general act. The presumption is that the special is intended to remain in force as an exception to the general act, especially where both laws were enacted at the same time or are substantially contemporaneous. And there is a tendency to hold that where there are two acts, one a special or local act, which certainly includes the matter in question, and the other a general act, which, standing alone, would include the same matter, so that the provisions of the two acts conflict, the special or local act must be given the effect of establishing an exception to the general act. Hence it is a canon of statutory construction that a later statute, general in its terms and not expressly repealing a prior special statute, will ordinarily not affect the special provisions of the earlier statute." 25 R. C. L. 927.

In Washington v. Miller, 235 U. S. 422, 428, 35 Sup. Ct. 119, 122 (59 L. Ed. 295), it is said:

"Where there are two statutes upon the same subject, the earlier being special and the later general, the presumption is, in the absence of an express repeal, or an absolute incompatibility, that the special is intended to remain in force as an exception to the general."

See, also, Ex parte United States, 226 U. S. 420, 424, 33 Sup. Ct. 170, 57 L. Ed. 281, and Petri v. Creelman Lumber Co., 199 U. S. 487, 26 Sup. Ct. 133, 50 L. Ed. 281.

The decision in Page v. Burnstine, 102 U. S. 664, 26 L. Ed. 268, involves considerations which have no application to the present case. What was there decided is concisely stated in McAllister v. United States, 141 U. S. 174, 184, 11 Sup. Ct. 949, 953 (35 L. Ed. 693), by Mr. Justice Harlan, who wrote the opinion in both cases, and who said that the conclusion in Page v. Burnstine was reached—

"not because the courts of the District of Columbia were adjudged to be of the class in which the judicial power of the United States was vested by the Constitution, but because all the acts relating to the competency of witnesses when construed together, indicated that that section of the Revised Statutes applied to the courts of the District of Columbia."

In the nature of things there could be no reason, and no reason is suggested, why Congress should intend to establish a rule of evidence in the District of Columbia different from that which obtained elsewhere in the federal courts of the United States. But there was reason for such discrimination as to the liquor laws of the District of Alaska.

The right to manufacture liquor for any purpose in Alaska has never been granted by any act of Congress, yet, if the contention of the plaintiff in error is correct, Congress has now granted that right in declaring, in the national act, "liquor for non-beverage purposes and wine for sacramental purposes" may be manufactured. It follows, also, if the contention is correct, that Congress has by the national act repealed that portion of section 2139 of the Revised Statutes (Comp. St. § 4136a) which provides, "No ardent spirits * * * shall be introduced, under any pretense, into the Indian country," and has greatly modified the penalty for introducing liquors into an Indian reservation, for an Indian reservation is affected by the national act in no lesser degree than is the territory of Alaska.

In brief, we think that the Bone Dry Law of Alaska remains in force, just as do the prohibition laws of the states, and the National Prohibition Act, although in force in all jurisdictions, affects no more the Alaskan act than it does the state acts.

The judgment is affirmed.

ROSS, Circuit Judge (dissenting). February 14, 1917, Congress passed an act, called in the record the Bone Dry Law (39 Stat. 903, c. 53), entitled "An act to prohibit the manufacture or sale of alcoholic liquors in the territory of Alaska, and for other purposes," the first section of which declared, among other things, that on and after the 1st day of January, 1918, it should be "unlawful for any person, house, association, firm, company, club, or corporation, his, its, or their agents,

officers, clerks, or servants, to manufacture, sell, give, or otherwise dispose of any intoxicating liquor or alcohol of any kind in the territory of Alaska, or to have in his or its possession or to transport any intoxicating liquor or alcohol in the territory of Alaska unless the same was procured and is * * * possessed and transported" as therein specifically provided, which specific provisions are inapplicable to the present case.

Subsequently there was enacted by Congress, pursuant to the Eighteenth Amendment to the Constitution, what is commonly known as the Volstead Act (41 Stat. 305), the title of which is as follows:

"An act to prohibit intoxicating beverages, and to regulate the manufacture, production, use, and sale of high-proof spirits for other than beverage purposes, and to insure an ample supply of alcohol and promote its use in scientific research and in the development of fuel, dye, and other lawful industries"

—designed to give effect to the prohibition provision of the Eighteenth Amendment, and which also made unlawful the act charged against the plaintiff in error.

The plaintiff in error was prosecuted for, and in the court below convicted of, the violation of the Bone Dry Law in that on the 4th day of February, 1920, at Juneau, Alaska, he willfully and unlawfully had in his possession for sale intoxicating liquor, and was sentenced to pay a fine of $800 and serve three months in jail, which punishment was authorized by the Bone Dry statute. Under the Volstead Act the maximum penalty for such offense (where, as in the present instance, it was the first offense) was a fine of $500 without any imprisonment.

The territory ceded to the United States by Russia by the Treaty of March 30, 1867, 15 Stat. 539, remained until 1884 unorganized, subject to provisions of Act July 27, 1868, c. 273, 15 Stat. 240, and subsequent acts, most of which were incorporated into R. S. §§ 1954–1976. It was constituted a civil and judicial district, and a civil government therefor was established, by Act May 17, 1884, c. 53, 23 Stat. 24, which provided for a Governor and other officers and for a District Court for said district. A Criminal Code and Code of Criminal Procedure for the district were enacted by Act March 3, 1899, c. 429, 30 Stat. 1253. Further provisions for a civil government, including a Code of Civil Procedure and a Civil Code, were made by the Carter Act of June 6, 1900, c. 786, 31 Stat. 321. And it was constituted the territory of Alaska, and further provisions for its government, including the creation of a legislative assembly, were made by Act Aug. 24, 1912, c. 387, 37 Stat. 512 (U. S. Comp. Stats. § 3528 et seq.). Section 3530 of those Statutes, relating to the territory of Alaska, is as follows:

"The Constitution of the United States, and all the laws thereof which are not locally inapplicable, shall have the same force and effect within the said territory as elsewhere in the United States; that all the laws of the United States heretofore passed establishing the executive and judicial departments in Alaska shall continue in full force and effect until amended or repealed by act of Congress; that except as herein provided all laws now in force in Alaska shall continue in full force and effect until altered, amended, or repealed by Congress or by the Legislature," with certain exceptions and provisions not applicable to the present case.

A similar statute, enacted by Congress February 21, 1871, respecting the District of Columbia, provided as follows:

"The Constitution and all laws of the United States, which are not locally inapplicable, shall have the same force and effect within the said District of Columbia as elsewhere in the United States." 16 Stat. 426.

In the statute first above quoted Congress was legislating for the territory of Alaska, and in the second for the District of Columbia—the one as much within the exclusive power and jurisdiction of Congress as the other—and for that reason the two provisions of the statutes quoted may be properly said to be substantially identical. One of the questions involved in the case of Page v. Burnstine, 102 U. S. 664, 26 L. Ed. 268, was whether a certain rule of evidence declared by section 858 of the Revised Statutes applied to the courts of the District of Columbia as fully as to the Circuit and District Courts of the United States. One of the grounds given by the Supreme Court for holding the affirmative of the proposition was that that portion of section 34 of Act Feb. 21, 1871, creating a government for the District of Columbia, declared that "the Constitution, and all the laws of the United States which are not locally inapplicable, shall have the same force and effect within the said District of Columbia as elsewhere within the United States"; the court saying in effect (102 U. S. 667, 26 L. Ed. 268) that, if other points made in the case were not well founded—

"It is, nevertheless, quite clear that, from and after the passage of the Act of February 21, 1871, if not before, the Act of March 3, 1865, became a part of the law of evidence in this District. The legal effect of the declaration that all the laws of the United States, not locally inapplicable, should have the same force and effect within this District as elsewhere within the United States, was to import into, or add to, the special Act of July 2, 1864, relating to the law of evidence in the District, the exception, created by the Act of March 3, 1865, to the general statutory rule, excluding parties as witnesses."

To the extent of all conflicts between the two acts of Congress here in question, namely, the Bone Dry Law and the Volstead Act, I not only think it plain on principle that the provisions of the latter are controlling, but it is in the Volstead Act expressly so declared in two places, to wit, in section 19 of title 3 and section 35 of title 2, in the first of which it is declared that "all prior statutes relating to alcohol as defined in this title are hereby repealed in so far as they are inconsistent with the provisions of this title," and in the second that "all provisions of law that are inconsistent with" it "are repealed only to the extent of such inconsistencies." To the inquiry, "What is there to show that the National Prohibition Act was intended to replace the Bone Dry Law of the territory of Alaska?" the answer is that the Volstead Act in its nineteenth section expressly declares that "all prior statutes relating to alcohol as defined in this title" (which manifestly includes Alaska's Bone Dry Law) "are hereby repealed in so far as they are inconsistent with the provisions of this title," and in its thirty-fifth section expressly declares that such repeals go "only to the extent of such inconsistencies."

The repeals relied on by the plaintiff in error being express repeals, questions relating to implied ones become irrelevant. I am unable to see any force in the suggestion that the provision of the National Pro-

hibition Act for the punishment of selling liquor in Alaska is "locally inapplicable" in Alaska for the reason that Congress had, previously provided for a severer penalty of the act when committed there. See, also, United States v. Tynen, 11 Wall. 88, 92, 20 L. Ed. 153; Houston v. Moore, 5 Wheat. 20, 5 L. Ed. 19; United States v. 356 Caddies of Tobacco, 11 Wall. (78 U. S.) 652, 659, 20 L. Ed. 235; United States v. Windham (D. C.) 264 Fed. 376; United States v. Sohm, et al. (D. C.) 265 Fed. 910.

In the present case the plaintiff in error was convicted of the alleged offense of having in his possession on the 4th day of February, 1920, at Juneau, Alaska, for the purpose of sale, alcohol and intoxicating liquor, and the evidence showing that the place where it was found was the place of business of the plaintiff in error, I think it manifest that no ground is afforded for any discussion of the point suggested about the need of a search warrant. That the law is that where there are two statutes imposing a penalty for the same offense, and the penalty imposed by the one is not the same as that imposed by the other, the later statute repeals the earlier, see Black on Interpretation of Laws (2d Ed.) 354, and cases there cited. And that the correct judgment may yet be entered by the court below on the verdict rendered, see United States v. Pridgeon, 153 U. S. 48, 14 Sup. Ct. 746, 38 L. Ed. 631; In re Bonner, 151 U. S. 242, 14 Sup. Ct. 323, 38 L. Ed. 149; Harlan v. McGourin, 218 U. S. 442, 31 Sup. Ct. 44, 54 L. Ed. 1101, 21 Ann. Cas. 849.

In my opinion the judgment should be reversed, and the case remanded to the court below, with directions to enter judgment upon the verdict in accordance with the provisions of the Volstead Act.