## UNITED STATES v. OLSON.

(Fourth Division. Fairbanks. May 25, 1922.)

**1. Intoxicating Liquors ⬦249—Searches and Seizures.**

The deputy United States marshal entered the defendant's private dwelling with a search warrant looking for intoxicating liquor. The affidavit and search warrant merely describe "about 50 gallons of intoxicating liquors which they the said Sam Olson and Mrs. Sam Olson, or the person to whom they have delivered the same, have secreted in that certain cabin occupied by the said Sam Olson and Mrs. Sam Olson, and situated," etc. Neither affidavit nor search warrant charged that sales were made on the described premises, and there was no charge or evidence that the house was used in whole or in part for business purposes. On trial the defendant moved to suppress the evidence of what the officer found in the house under his search warrant. *Held*, the National Prohibition Act (41 Stat. 305) is applicable, and searches and seizures in private dwellings in Alaska must be conducted in accordance with section 25, tit. 2, of that act. To that extent the Alaska Bone Dry Act (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 3643b–3643r) and the Alaska Code are modified in such cases. The evidence so obtained in this case from defendant's private dwelling is suppressed because obtained in violation of section 25, tit. 2, National Prohibition Act.

**2. Intoxicating Liquors ⬦245—Searches and Seizures ⬦2—Statutes—Repeal.**

Under the Alaska Bone Dry Law, enacted by Congress in 1917, there was no limitation upon the search of private dwellings as such. In section 25, tit. 2, of the National Prohibition Act, enacted by Congress in 1919, it is provided, that "no search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor, or unless it is in part used for some business purpose such as a store, shop, saloon, restaurant, hotel, or boarding house." To that extent the National Prohibition Act repeals the Alaska Bone Dry law and the Alaska Code in respect to searches and seizures in private dwellings.

The objection of defendant to testimony by the witness Parker stating what he found in the Olson house when he entered it with a search warrant raises the question: What law governs the issuance and execution of search warrants in Alaska when a search is asked for under the prohibition statutes? If the Alaska Bone Dry Act (U. S. Comp. St. 1918, U.

⬦See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

·S. Comp. St. Ann. Supp. 1919, §§ 3643b–3643r) and the general statute providing for search warrants control such cases, no different rule prevails in searches for liquor than in searches for stolen goods or evidence of crime.   If the Volstead Act (41 Stat. 305) controls, no search warrant can issue for the discovery of liquor in a dwelling unless based on an affidavit setting forth positive knowledge that liquor is being sold in the house, or the house is used in part for business ·purposes.

The verified application for the suppression of evidence in this case stated that the house in question was the dwelling of defendant Olson and his wife.   No countershowing was made by the government, but the application was refused because at that time I was in doubt whether the ex ·parte showing that the house was a dwelling solely ought to be accepted as conclusive, even if not denied, and also because at that time I was in doubt whether or not the search warrant provision of the Volstead Act has superseded all previous laws affecting search warrants in the enforcement of prohibition laws in Alaska.   Objection was renewed at the trial after Deputy Marshal Parker gave testimony tending to show that the house was the residence of the Olsons.

The affidavit and the search warrant merely describe "about 50 gallons of intoxicating liquors which they, the said Sam Olson and Mrs. Sam Olson, or the person to whom they may have delivered the same, have secreted in that certain cabin occupied by the said Sam Olson and Mrs. Sam Olson and 'situated," etc.

Neither affidavit nor search warrant charged that sales were made on the premises described.

·Guy B. Erwin, U. S. Atty., and L. R. Gillette, Asst. U. S. Atty., both of Fairbanks.

Thos. A. Marguam, of Fairbanks, for defendant.

RITCHIE, District Judge.   The important issue is whether searches and seizures in private dwellings must be made under the limitation of the Volstead Act.   It seems to me they must be unless the Volstead Act is locally inapplicable.   The organic act creating a territorial assembly in Alaska provides:

"That the Constitution of the United States, and all the laws thereof which are not locally inapplicable, shall have the same

force and effect within the said territory as elsewhere in the United States." (Comp. Laws Alaska 1913, § 410.)

This provision is incorporated in the organic acts of all territories. The Volstead Act provides:

"Sec. 35. All provisions of law that are inconsistent with this act are repealed only to the extent of such inconsistency and the regulations herein provided for the manufacture or traffic in intoxicating liquor shall be construed as in addition to existing laws."

The act also provides that the states shall have concurrent power with the federal government to enforce the act.

In Abbate v. United States, 270 Fed. 735, the Circuit Court of Appeals for the Ninth Circuit held that the Eighteenth Amendment and the Volstead Act do not repeal the so-called Bone Dry Act of Alaska. In the opinion of the court Judge Gilbert says:

"The provision of the National Prohibition Act for the punishment of selling liquor in Alaska is 'locally inapplicable' in Alaska, for the reason that Congress has provided for a severer penalty for the act when committed there."

In that case the defendant, for a first offense against the Bone Dry Law, had been sentenced to pay a fine of $800 and to be imprisoned three months in jail. The Volstead Act provides a penalty of $500 without imprisonment for a first offense against that act. On the appeal it was contended that the Bone Dry Act was repealed by the Volstead Act. It is not necessary to quote extensively from the opinion, since all Alaska lawyers are familiar with it. In the opinion of the court Judge Gilbert said:

"In enacting the Bone Dry Law, * * * Congress was pursuing its policy of prohibition in Indian country."

It was suggested in the argument by counsel for the defendant in this case that the statement just quoted amounted to a dictum that all Alaska is Indian country. I do not think Judge Gilbert intended to say that, nor is his statement susceptible of that construction when the entire paragraph is read. The opinion merely refers to the fact that the population of Alaska is largely composed of Indians, and therefore Congress was pursuing its policy of prohibition in Indian country. The territory is not Indian country, aside from Indian reservations and lands owned by Indians, because they actually live

upon them. Indian country has been defined by the Supreme Court of the United States as "all the country to which the Indian title has not been extinguished within the limits of the United States." Ex parte Crow Dog, 109 U. S. 556, 3 Sup. Ct. 396, 27 L. Ed. 1030. It is clear, therefore, that Alaska generally is not Indian country, and that Judge Gilbert did not intend to so designate it.

The question is, therefore, whether or not the Volstead Act generally is locally inapplicable to Alaska. The appellate court having held that the Bone Dry Law is not repealed by the Volstead Act, it is the law of this jurisdiction that the Bone Dry Act generally may still be enforced in Alaska if the prosecuting officers choose to bring prosecutions under it instead of under the Volstead Act. That, however, does not dispose of the question of search warrants.

The Bone Dry Act provides in section 17 that, when complaint is made to the district attorney of violations of the act, the attorney shall cause to be issued a warrant for a search of "the said described room, house, building, or other place, and the appurtenances thereof." Section 23 provides that there shall be no property right in alcoholic liquors illegally manufactured, received, possessed, or stored under the act, and that they may be searched for and seized and destroyed after a conviction. No specific provision governing the issue of search warrants was made by the Bone Dry Act, and therefore it was generally held that the provisions of the Alaska Code governing search warrants applied to the seizure of liquor. Section 2488 of the Alaska Code provides:

"That a search warrant cannot be issued but upon probable cause, shown by affidavit, naming or describing the person, and describing the property and the place to be searched."

It is plain, therefore, that prior to the enactment of the Volstead Act a dwelling might be searched the same as any other building for intoxicating liquor kept or stored there in violation of the act. But the Volstead Act makes a new provision for the protection of private dwellings. Section 25 of that act reads, in part, as follows:

"A search warrant may issue as provided in title XI of public law numbered 24 of the Sixty-Fifth Congress, approved June 15, 1917, and such liquor, the containers thereof, and such property so seized shall be subject to such disposition as the court may

make thereof. If it is found that such liquor or property was so unlawfully held or possessed, or had been so unlawfully used, the liquor, and all property designed for the unlawful manufacture of liquor, shall be destroyed, unless the court shall otherwise order. No search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor, or unless it is in part used for some business purpose such as a store, shop, saloon, restaurant, hotel, or boarding house."

Under the section just quoted the provisions of the Espionage Act of 1917 governing search warrants are imported into the Volstead Act. Section 3 of the Espionage Act (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 10496¼c) reads as follows:

"A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person and particularly describing the property and the place to be searched."

In this case the issue raised by the objection to the admission in evidence of anything seized under the search warrant is to be disposed of by the decision whether or not the Volstead Act, in the matter of searching private dwellings for intoxicating liquors, supersedes and repeals all existing search warrant provisions, either of the Bone Dry Act or the Alaska Code. It is needless to consider decisions of the federal courts under the Volstead Act or its search warrant provisions, because none of those decisions bear on the status of the law in Alaska. The situation here is peculiar, and not even a Supreme Court decision on searches and seizures in dwellings under the Volstead Law can be decisive unless it were on an Alaska appeal. So far as I know, the precise point raised in this case has not been decided in Alaska, and it certainly has not reached the Circuit Court of Appeals or the Supreme Court.

In Abbate v. United States, supra, the appellate court did not make any ruling upon search warrants because that question was not before it. The opinion, however, quoted this rule of statutory construction:

"Where there are two statutes upon the same subject, the earlier being special and the later general, the presumption is, in the absence of an express repeal, or an absolute incompatibility, that the special act is intended to remain in force as an exception to the

general." Washington v. Miller, 235 U. S. 422, 428, 35 Sup. Ct. 119, 122 (59 L. Ed. 295).

In Page v. Burnstine, 102 U. S. 664, 26 L. Ed. 268, it was held that a later act of Congress prescribing a certain rule of evidence for United States courts prevailed over a different rule previously enacted by Congress for the courts of the District of Columbia. In the Abbate Case the Circuit Court of Appeals said that Page v. Burnstine "involves considerations which have no application to the present case," and that—

"In the nature of things there could be no reason, and no reason is suggested, why Congress should intend to establish a rule of evidence in the District of Columbia different from that which obtained elsewhere in the federal courts of the United States. But there was reason for such discrimination as to the liquor laws of the district of Alaska."

The language just quoted and the cited decision in Washington v. Miller, supra, are to be considered in passing upon the question at bar. It must be decided whether, as suggested in Washington v. Miller, there is an "absolute incompatibility" between the Volstead Act and the Bone Dry Law in the matter of searching private dwellings. It must be noted that the Bone Dry Law is silent on searching dwellings. Is it not fair, then, to argue that the Volstead Act makes a new special provision which is "incompatible" with the general provisions of the Bone Dry Law?

The question is to be decided by the general rules of statutory construction. There is no doubt but the Alaska Bone Dry Act and the Volstead Act are in pari materia, and therefore all their provisions must be read together. So far as most of their provisions are concerned, there is no necessary conflict between them, but the provision of the Volstead Act that a search warrant shall not issue to search a private dwelling occupied as such unless the dwelling is used for the unlawful sale of intoxicating liquor makes it necessary to decide whether that provision must govern such seizures in Alaska or whether it is "locally inapplicable." I see no reason to hold that this special provision is locally inapplicable. It appears to me to be a declaration by Congress of a special policy to govern searches and seizures under the prohibition laws. It seems likely that Congress was impressed with the belief that gross abuses might arise from allowing searches and seizures

to be made in private houses by prohibition agents without some restriction requiring a strong case to be made before a search warrant should issue. Without such restriction the so-called dry agents could enter private houses on the flimsiest pretext. Under one city régime in the city of Seattle, under the state prohibition law, a few years ago, dry agents entered private houses almost at will and frequently destroyed property with axes and other destructive weapons in a search for liquor supposed to be concealed. This conduct created much resentment and general scandal, and, in deference to public opinion, was in time modified. I think it was to prevent such practices that Congress insisted upon the incorporation in the Volstead Act of this special provision for the protection of private residences. It has been said by the courts repeatedly that there is hardly any process of law which subjects the citizen to such personal humiliation as a search of his house by an officer of the law for contraband of any kind, whether he be guilty or innocent. I am satisfied that Congress thought it necessary, in order to carry out the full intent of the Fourth Amendment to the Constitution, that this provision be incorporated in the Volstead Act, and, because I believe that to be the intent and purpose of Congress, I am constrained to hold that this specific provision extends to Alaska and so far repeals the Bone Dry Act and the Alaska Code. It is the latest legislation of Congress on the subject, and it seems to me that its purport is so plain that it must prevail over all previous enactments of Congress on the subject. Therefore the objection to the proposed evidence in this case is sustained.

I am still of the opinion that the misnomer in the original affidavit, search warrant, and complaint did not invalidate any of them. The surname was correct, and the premises were sufficiently described so that no one could have been deceived by the error in the first name. The Iowa Supreme Court once pertinently remarked, in affirming denial of a motion to quash a summons because of a misnomer, that the right party had been served, and that it is a person who is summoned, and not a name.

It might be noted here that the Fourth Amendment to the federal Constitution provides that no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the per-

sons or things. to be seized. In this case the place to be searched was well described and also the liquor which was intended to be seized. The warrant did not call for the seizure of any person, and the mention of the person was only incidental to the seizure, because he was the custodian of the place to be searched and the things to be seized. The Alaska Code provision is in practically the same language and is in the usual form of search warrant provisions everywhere in the United States.

If the search warrant had called for the arrest of Sam Olson, I do not think it would have been a sufficient warrant for the arrest of Thomas M. Olson. In such case the principle involved is that decided by the Supreme Court in West v. Cabell, 153 U. S. 78, 14 Sup. Ct. 752, 38 L. Ed. 643. In that case a deputy United States marshal arrested Vandy M. West under a warrant authorizing him to arrest James West upon a murder charge. It appeared that Vandy M. West was not the man who was wanted, and the Supreme Court held that there was no excuse for the deputy arresting the wrong man under a warrant calling for a name not his own. But in that case the warrant was issued for the arrest of a man, and not for the seizure of property. I am still of the opinion that the misnomer in this case was harmless, though officers should. exercise more care to get names correctly whenever possible.

☜See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes