### MADDEN v. UNITED STATES.
### No. 3014.

Circuit Court of Appeals, First Circuit.
Dec. 17, 1935.

John A. Canavan, Asst. U. S. Atty., of Boston, Mass. (Francis J. W. Ford, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before MORTON, Circuit Judge, and MORRIS and McLELLAN, District Judges.

MORRIS, District Judge.

This is an indictment in five counts charging the defendant, in counts 1 and 4, with forgery of two separate writings for the purpose of defrauding the United States, and, in counts 2 and 5, with uttering the forgery alleged in counts 1 and 4, respectively, and, in count 3, with uttering of a third alleged forged writing. The defendant was found guilty on all five counts, and his appeal is based upon alleged errors in the failure of the court to grant a motion for directed verdict of not guilty upon all the counts, and a motion in arrest of judgment.

In counts 1 and 4 the defendant is charged with the forgery of the name of "E. L. Hanna," National Re-employment Manager of the Civil Works Administration, to so-called "assignments and identification cards" used by said administration in the selection and employment of individuals employed by those in charge of projects to which federal funds are advanced. Counts 1 and 2 charge forgery and uttering respectively as to a card used by one Margaret Keeler in securing employment. Counts 4 and 5 charge forgery and uttering respectively as to a card used by one Christina M. Callahan in securing employment. Count 3 charges uttering of a forged card used by one Alberta M. Sullivan.

The defendant admitted signing Hanna's name to the Keeler and Callahan cards, and delivering to Alberta M. Sullivan the card which, the evidence offered by the government tended to show, was not signed by Hanna or by his authority.

The defendant asserted that he was authorized by Hanna to sign the latter's name and to issue such cards when so signed. This assertion was denied by Hanna.

The evidence showed that the money appropriated by the federal government was received by the state from the Federal Emergency Relief Fund and turned over to a state agency called the Emergency Finance Board, which in turn authorized the expenditure of money by the city of Boston, in card indexing books in the Boston Public Library. The persons to whom the

Thomas H. Mahony, of Boston, Mass. (Edward R. Coplen, of Boston, Mass., on the brief), for appellant.

forged "assignments and identification cards" were delivered were assigned to and performed services because of such cards in the Boston Public Library and were paid by the city of Boston from such funds so obtained and allocated.

The indictment was drawn under section 28 of the Criminal Code (18 U.S.C.A. § 72), the pertinent provisions of which are: "Whoever shall falsely make, alter, forge, or counterfeit, or cause or procure to be falsely made, altered, forged, or counterfeited, or willingly aid, or assist in the false making, altering, forging, or counterfeiting, any bond, bid, proposal, contract, guarantee, security, official bond, public record, affidavit, or other writing for the purpose of defrauding the United States; or shall utter or publish as true, or cause to be uttered or published as true" any such writing shall be punished in accordance with the provisions of said section.

The defendant assigned errors as follows:

"1. The District Court erred in its admission and exclusion of certain testimony and evidence.

"2. The District Court erred in refusing to direct a verdict of not guilty for the defendant on the following grounds:

"(a) Because the government had not sustained the burden of proof.

"(b) Because there was a variance between the allegation of the indictment and the evidence.

"(c) Because no law of the United States had been violated.

"(d) Because the law applicable to the indictment and the evidence is unconstitutional.

"3. The District Court erred in denying the defendant's motion in arrest of judgment for the reason that the statute under which the indictment was brought was superseded by a later statute."

Only such assignments will be considered as have been argued by defendant's counsel, it not appearing that the other assignments are of such merit as to require special attention of the court in the absence of arguments.

Defendant's counsel in argument confined himself to the following points: (1) Is the statute relating to the Public Works Administration constitutional? (2) Is section 72 of title 18 U.S.C.A., section 28 of the Criminal Code, relating to forgery, so far as the charges herein are concerned, superseded by section 209 of the National Industrial Recovery Act, 40 U.S.C.A. § 409? (3) Is there a fatal variance between the indictment and the evidence? (4) Is any offense charged in the indictment?

Counsel for the appellant stresses the point in argument that the provisions of the National Industrial Recovery Act are unconstitutional and that Congress has no constitutional authority under the public welfare clause to set up a bureau or agency for the expenditure of federal funds for purely state or municipal projects such as to pay employees for cataloguing books in the Boston Public Library.

There seems to be some diversity of opinion as to the constitutionality of this law [see Missouri Utilities Co. v. City of California (D.C.) 8 F.Supp. 454; Kansas Gas & Electric Co. v. City of Independence (C.C.A.) 79 F.(2d) 32, opinion handed down August 20, 1935; Washington Water Power Co. v. City of Coeur d'Alene (D.C.) 9 F.Supp. 263]; but this is not a question which we must decide, for if we were to assume that the act appropriating the money is unconstitutional, such assumption does not furnish justification for embezzlement of the funds in question, neither would it furnish justification to the defendant for diverting by means of forged instruments such funds from the channels to which they had been allocated.

Under section 72, title 18, one of the requisites of an indictment is the allegation that the forgery was committed by the alteration of a writing for the purpose of defrauding the United States, and the question is presented as to whether or not the funds which the writing was intended to divert, were funds belonging to the United States.

Under section 201 (a) of the National Industrial Recovery Act, 40 U.S.C.A. § 401 (a), it is provided that: "To effectuate the purposes of this title [chapter], the President is hereby authorized to create a Federal Emergency Administration of Public Works, all the powers of which shall be exercised by a Federal Emergency Administrator of Public Works (hereafter referred to as the 'Administrator'), and to establish such agencies, to accept and utilize such voluntary and uncompensated services, to appoint, without regard to the civil service laws, such officers and employees, and to utilize such Federal officers and employees, and, with the consent of the State, such State and local officers and employees

as he may find necessary, to prescribe their authorities, duties, responsibilities, and tenure, and, without regard to the Classification Act of 1923, as amended [chapter 13 of Title 5], to fix the compensation of any officers and employees so appointed. The President may delegate any of his functions and powers under this title [chapter] to such officers, agents, and employees as he may designate or appoint."

It appears from the evidence that the President acting under the National Industrial Recovery Act allocated a sum of money to the state of Massachusetts to be used in providing employment for persons out of work and that to carry out the expenditure of such federal money the state of Massachusetts set up a bureau known as the Civil Works Administration, created for the purpose of selection and placement of applicants applying for work under this head.

One Quimby was drafted by the United States Department of Labor to assume the office of Re-employment Director for the State of Massachusetts, and as such he was responsible for the placement of applicants on Civil Works Administration projects in said state. He was authorized by the United States Public Employment Agency to designate existing state employment officers for the selection and employment of persons on government projects. E. L. Hanna was one of the persons so designated. The indexing of the books in the Boston Public Library was one of the projects, in the carrying out of which government money was to be used. The state organization was approved by the President by executive order November 9, 1933. There is no question but that the money to be expended was earmarked as federal funds from the time it left the United States Treasury until paid to employees engaged in indexing the books in the Boston Public Library. It follows that any diversion of those funds from the purpose for which they were granted was a diversion of federal money, and if such diversion were accomplished by forging the name of any one whose duty it was to select employees for the project, it constituted a crime under section 72 of title 18 U.S.C.A., section 28 of the Criminal Code, because it constituted a diversion of federal funds from the channels to which they had been allocated.

Counsel for the defendant contends that section 72 of title 18 U.S.C.A., section 28 of the Criminal Code relating to forgeries, in so far as the charges herein are concerned, is superseded by section 209 of the National Industrial Recovery Act, 40 U.S.C.A. § 409. Section 209 provides as follows: "The President is authorized to prescribe such rules and regulations as may be necessary to carry out the purposes of this title [chapter], and any violation of any such rule or regulation shall be punishable by fine not to exceed $500 or imprisonment not to exceed six months, or both."

■■■ Implied repeals are not favored, and if effect can reasonably be given to both statutes, the presumption is that the earlier is to remain in force. In order that a statute repeal by implication an earlier statute, there must be a positive repugnance or incompatability between the two statutes. United States v. Burroughs, 289 U.S. 159, 164, 53 S.Ct. 574, 77 L.Ed. 1096; Washington v. Miller, 235 U.S. 422, 428, 35 S.Ct. 119, 59 L.Ed. 295; Dial v. Chatman (C.C. A.) 70 F.(2d) 21, 23; United States v. Yuginovich, 256 U.S. 450, 463, 41 S.Ct. 551, 65 L.Ed. 1043.

■ While it is true that rules and regulations were prescribed such as were necessary to carry out the purposes of the National Industrial Recovery Act, nowhere does it appear that any rules or regulations so prescribed have been violated such as would furnish ground for an indictment under section 209. We make a distinction between violation of the rules and regulations prescribed and the purely common-law crime of forgery, although it may be committed with respect to documents or papers used for the purpose of carrying out the act. We hold that there is no such inconsistency between section 209 of the National Industrial Recovery Act (40 U.S.C.A. § 409) and section 28 of the Criminal Code (18 U.S.C.A. § 72) as to work a repeal of section 28 so far as applicable to this case.

In none of the rules or regulations prescribed by the President or the Administrator of Public Works is any reference made to the so-called "assignment and identification cards" or to the forging or uttering of the same. The cards were just what the name signifies. They were the means provided for assigning persons to work and as a means of identification for such persons. Defendant's contention that section 28 of the Criminal Code (18 U.S.C.A. § 72) has been abrogated or repealed pro tanto by reason of section 209 of the National Recovery Act is without merit.

Defendant contends that there was a fatal variance between the proof and the indictment. His argument is that funds granted by the Federal Emergency Relief Administration to the Emergency Finance Board, a state agency, became state funds and thereafter no title thereto existed in any federal agency, and when the Emergency Finance Board transferred part of its funds to the city of Boston for payment of Boston Public Library employees, title to such funds passed to the city of Boston, and thereafter the power of disposition of such funds was in the city of Boston and no federal agency had any power over them. This contention is not sound. All projects carried on with money derived from the federal government had to be approved by the Federal Administrator. Any diversion of such funds from the project to which they were assigned was a diversion of government money. As hereinbefore stated, all funds allotted by the federal government for the relief of unemployment even though disbursed by state agencies were earmarked as federal funds, and if diverted from the use for which they were granted it constituted a fraud upon the government. Langer v. United States (C.C.A.) 76 F.(2d) 817. See, also, United States v. Walter, 263 U.S. 15, 44 S.Ct. 10, 68 L.Ed. 137; United States v. Clallam County (D.C.) 283 F. 645.

As a further ground of a fatal variance the defendant contends that not all of the writing disclosed on the application cards was thereon at the time of the forgery. The evidence shows with respect to the application card of Margaret Keeler that the words "Mr. Rooney" were not upon the card when she received it with Hanna's name upon it, but was added later by Miss Coppock. The defendant claims the card was worthless so far as entitling Miss Keeler to employment or compensation or being capable of defrauding the federal government without such notation, and that therefore the card pleaded in the indictment was different in its contents than the card shown in evidence.

On the Alberta M. Sullivan card it appears that her own signature and the words "O.K." M. Coppock" were added after she received the card from the defendant.

It appears to us that the defendant's contention with reference to these notations made on the cards after they had passed from defendant's hands is without merit.

If an indictment apprises the defendant of the crime with which he is charged and sets it forth in such a manner that he may avail himself of the plea of former jeopardy, slight variations between the proof and the indictment are not material or fatal variances. Bishop v. United States (C.C.A.) 16 F.(2d) 406, 408. Meyers v. United States (C.C.A.) 3 F.(2d) 379, 380. In the latter case Judge Manton uses the following language: "No variance ought ever to be regarded as material where the allegations and proof substantially correspond or where the variance was not of a character that could have misled the defendant on trial."

The variance in the instant case is immaterial. The defendant forged the name of E. L. Hanna to the "assignment and identification cards" with the full knowledge and intent and with the expectations that they would be presented to the proper persons in immediate charge of the work and checked and approved to show actual employment and identification with names on the pay roll.

Defendant could not have been misled as to the nature of the charge against him, or in the preparation of his case by such notations placed upon the cards after they left his hands as would be essential for the placement of the persons to whom the cards were delivered; otherwise, the purposes of the forgery and uttering of the forged documents which the defendant intended would be defeated.

The jury were charged at length by the presiding judge and the principles of law applicable were clearly stated. No exceptions were taken to the charge. We find in the record no reversible error.

The judgment of the District Court is affirmed.