**ARMY AND AIR FORCE EXCHANGE SERVICE and Insurance Company of North America, Plaintiffs,**

**v.**

**C. F. HANSON, Deputy Commissioner of Labor, Defendant.**

**Civ. No. 2898.**

United States District Court, D. Hawaii.

March 13, 1970.

Dennis E. W. O'Connor, Anthony & Waddoups, Honolulu, Hawaii, for plaintiffs.

Robert K. Fukuda, U. S. Atty., Honolulu, Hawaii, for defendant.

## DECISION

PENCE, Chief Judge.

Defendant Hanson, Deputy Commissioner of Labor, made a workmen's compensation award to one Benedicto Deang under the Longshoremen's and Harbor Workers' Compensation Act[1] (Longshoremen's Act). Deang, a citizen and resident of the Philippines, allegedly contracted tuberculosis as a result of his employment with plaintiff Army and Air Force Exchange Service (Exchange) at Clark Air Force Base, an American military installation in the Philippines. Plaintiff Exchange and its workmen's compensation insurer bring this action to enjoin the enforcement of the award to Deang.

The sole question presented by cross-motions for summary judgment is whether workmen's compensation protection is extended to Deang under the provisions of the Longshoremen's Act. The defendant asserts that it is, by virtue of the Defense Base Act.[2] The plaintiffs maintain that, by virtue of the Nonappropriated Fund Instrumentality Act[3] (Instrumentality Act), Deang is barred from seeking workmen's compensation under the Longshoremen's Act, and must instead seek workmen's compensation under regulations promulgated by the Secretary of the Air Force.

The workmen's compensation rights of foreign employees working at American military bases abroad have been subject to frequent revision. In 1941 Congress enacted the Defense Base Act, which made workmen's compensation under the Longshoremen's Act available to

". . . any employee engaged at any employment in any military, air, or naval base acquired after January 1, 1940, by the United States from any foreign government or any lands occupied or used by the United States for military or naval purposes in any Territory or possession outside the continental United States, including . . . the Philippine Islands . . ."
55 Stat. 622, P.L. 208 (1941).[4]

The Defense Base Act, as originally enacted, thus extended coverage under the Longshoremen's Act to foreign citizens and residents, like Deang, working at American bases in the Philippines.

In 1942 the Defense Base Act was amended. 56 Stat. 1035–1036, P.L. 784, Title III. The delineation of covered employees was altered in several respects not material here; the liability of the employer under the Act was made exclusive; and coverage under the Longshoremen's Act which would otherwise be extended by the Defense Base Act was made waivable as to certain classes of employees.[5]

1. Title 33, U.S.C., Chapter 18, Secs. 901–950.

2. Title 42, U.S.C., Chapter 11, Secs. 1651–1654.

3. Title 5, U.S.C., Secs. 2105(c), 8171–8174.

4. The Philippines, formerly a United States possession, was granted independence in 1946. In the following year, the United States acquired Clark Air Force Base from the Republic of the Philippines.

5. 56 Stat. 1036, Sec. 301(e). The waiver provision, considerably expanded, is now codified as 42 U.S.C. § 1651(e). It is not urged by the plaintiffs, however, that coverage was waived as to the class of employees of which Deang is a member.

In 1952 Congress passed the Nonappropriated Fund Instrumentality Act. 66 Stat. 138–139, P.L. 397. The first section of this Act specifically includes the Exchange among the affected instrumentalities and indicates that instrumentality employees

" . . . shall not be held and considered as employees of the United States for the purpose of any laws administered by the Civil Service Commission or the provisions of the Federal Employees' Compensation Act (39 Stat. 742) . . . 66 Stat. 138, 139."

The second section of the Instrumentality Act details a program of workmen's compensation for instrumentality employees:

"The nonappropriated fund instrumentalities described in the first section of this Act shall provide their civilian employees, by insurance or otherwise, with compensation for death or disability incurred in the course of employment. In the case of employees employed in the continental United States (except Alaska), compensation shall be not less than that provided by the laws of the State (or the District of Columbia) in which the employing activity of any such instrumentality is located. In the case of employees employed outside the continental limits of the United States and in Alaska, compensation shall be not less than that provided in sections 7, 8, and 9 of the Longshoremen's and Harbor Workers' Compensation Act (44 Stat. 1427–1430), as amended, except that in the case of such employees who are not citizens of the United States, compensation shall be in accordance with regulations to be prescribed by the Secretary of the Army, Navy, Air Force, or Treasury, as the case may be. . . ."

Although the Instrumentality Act does not explicitly repeal or modify the Defense Base Act in any respect, its program of workmen's compensation for instrumentality employees appears clearly to supersede the Defense Base Act as to this group of employees.

In 1958 both the Defense Base Act and the Instrumentality Act were amended.[6] The latter was amended to extend workmen's compensation protection under the Longshoremen's Act to instrumentality employees who are either (a) foreign citizens employed within the continental United States, or (b) United States citizens or permanent residents employed outside the continental United States. 72 Stat. 397, P.L. 85–538, now codified as 5 U.S.C. § 8171. The workmen's compensation rights of an instrumentality employee who, like Deang, is not a citizen or permanent resident of the United States and is employed outside the continental United States, remained as they were under the original Instrumentality Act: compensation for such employees is to be "provided in accordance with regulations prescribed by the Secretary of the military department concerned . . . ." 72 Stat. 397 (5 U.S.C. § 8172). The liability of the employer created by the Instrumentality Act is made exclusive. 72 Stat. 397–398 (5 U.S.C. § 8173).

■ The 1958 amendments to the Defense Base Act extended coverage under the Longshoremen's Act to

"(a) . . . any employee engaged in any employment—

\*    \*    \*    \*    \*    \*

"(6) outside the continental United States by an American employer providing *welfare or similar services* for the benefit of the Armed Forces pursuant to appropriate authorization by the Secretary of Defense. . . ." (Emphasis added.) 72 Stat. 537, P.L. 85–608, § 201(a) (42 U.S.C. § 1651 (a)(6)).

The legislative history accompanying P. L. 85–608 makes it clear that by "welfare or similar services" Congress intended to designate organizations such

---

6. Other amendments to these two Acts are not relevant to the disposition of this case.

as the "American Red Cross, USO, [and] Salvation Army", not nonappropriated fund instrumentalities. 1958 U.S.Code Cong. and Adm.News, p. 3324. This difference is also made manifest by other provisions of the same act, P.L. 85–608. These provisions, which amend the War Hazard Compensation Act, treat employees "providing welfare and similar services" and instrumentality employees as separate categories. 72 Stat. 536, §§ 101(b), 101(c) (42 U.S.C. §§ 1701(a)(3), 1701(a)(5)).

To summarize, the Defense Base Act and the Instrumentality Act, as they were amended in 1958, continued to reflect an apparent conflict. The Defense Base Act purported to cover "*any* employee engaged in *any* employment" at installations such as Clark Air Force Base. The Instrumentality Act purports to place all instrumentality employees under a different program of workmen's compensation. The liability created by both statutes purports to be exclusive.

■ The court must, and does, conclude that Congress intended the Instrumentality Act to operate as an exception to the Defense Base Act. This result is compelled by the familiar principle of statutory construction that

". . . the subsequent enactment of a statute which treats a phase of the same general subject matter in a more minute way consequently repeals *pro tanto* the provision of the general statute with which it conflicts." Sutherland on Statutory Construction, § 2022. See Abbate v. United States, (9 Cir. 1921) 270 F. 735.

If the Instrumentality Act is not so construed, it becomes in part redundant, in part a nullity. Since the provisions of the Instrumentality Act are thus here controlling, workmen's compensation under the Longshoremen's Act is not available to Deang.

Plaintiffs' Motion for Summary Judgment is granted, the compensation order is set aside, and the defendant Deputy Commissioner is permanently enjoined from enforcing the same.

Plaintiffs will prepare the necessary judgment.